UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
EASTMAN KODAK COMPANY,                  :
                        Plaintiff,      :
                                        :       11 Civ. 6036 (DLC)
              -v-                       :
                                        :       OPINION & ORDER
ASIA OPTICAL CO., INC.,                 :
                        Defendant.      :
                                        :
----------------------------------------X

APPEARANCES:

For Third-Party Plaintiff:

Mark S. Sullivan
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019

Devan K. Padmanabhan
Sri K. Sankaran
Winthrop & Weinstein, P.A.
Suite 3500, 225 South Sixth Street
Minneapolis, MN 55402

For Third-Party Defendants:

Clifford R. Michel
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019


DENISE COTE, District Judge:

     On December 7, 2011, defendant Asia Optical, Inc. ("AO"),

filed a third-party complaint ("the AO Complaint") against

Fujifilm Holdings Corporation ("FH"), Fujifilm Corporation

("FC"), and Fujifilm North America Corporation ("FNAC").  FH and FC are Japanese corporations; FNAC is a New York corporation.

The AO Complaint seeks a declaratory judgment that the third-party defendants are obligated to indemnify AO for any damages awarded plaintiff Eastman Kodak Company ("Kodak") in this action, and seeks damages based on breach of contract, or in the alternative unjust enrichment.  The third-party defendants moved to dismiss the AO Complaint on February 17.  The February 17 motion is granted.  A New York court has already concluded that there is no personal jurisdiction over the two Japanese defendants and AO is collaterally stopped from relitigating that determination.  The remaining claim against the New York defendant must be dismissed for failure to state a claim.


BACKGROUND


I.  The AO Complaint

The following facts are taken from the AO Complaint, and assumed to be true for the purposes of this Opinion.  AO is a Taiwanese corporation.  FH and FC (collectively "Fuji") are Japanese corporations with their principal places of business in Japan, and successors-in-interest to Fuji Photo Film Co., Ltd. ("Fuji Photo Film"), a Japanese corporation with its principal

place of business in Japan.  FNAC is a Fuji subsidiary organized as a New York corporation with its principal place of business in New York.

AO designs and manufactures digital still cameras ("DSCs") and their component parts.  In April 2004, AO entered into a patent license agreement (the "2004 PLA") with Kodak.[1]

AO manufactured DSCs for Fuji Photo Film (the "Fuji DSCs"), based upon designs and specifications provided by Fuji Photo Film.  The Fuji DSCs manufactured by AO were destined for sale primarily in the United States.  The DSCs were distributed in the United States, including New York, through FNAC.

AO alleges that Fuji Photo Film agreed that it would indemnify and hold AO harmless from any claims of patent infringement or claims for royalties relating to the Fuji DSCs. Kodak subsequently made a demand for payment of royalties by AO for the manufacture of the Fuji DSCs, pursuant to the 2004 PLA. AO then requested that Fuji Photo Film assume responsibility for and resolve Kodak's royalty demand.  Fuji repeated its promise to indemnify and hold AO harmless from Kodak's claims, and represented that it would resolve the royalty demand directly with Kodak.

---

[1] In a March 16, 2012 Opinion, the Court granted Kodak partial summary judgment on the interpretation of certain terms in the 2004 PLA.  See 2012 WL 917393 (S.D.N.Y. Mar. 16, 2012).

AO attaches two documents to its third-party complaint bearing on Fuji Photo Film's alleged agreement to indemnify AO. On September 9, 2005, a Fuji Photo Film employee in Tokyo wrote a letter ("the September 9 Letter") to Alan Steves, a Kodak employee in Rochester, New York, acknowledging Kodak's royalty demand to AO and requesting that "further communication from Kodak regarding this matter . . . be directed to Fuji's attention directly, not to" AO.  On May 2, 2006, another Fuji Photo Film employee in Tokyo e-mailed (the "May 2 E-mail") Robert Lai, AO's Chairman, stating that Fuji Photo Film had begun negotiations with Kodak.  According to the May 2 E-mail, Kodak had agreed to enter a "standstill agreement" with AO.  The e-mail noted that although Fuji Photo Film had "no say in the content of this agreement, we believe it will eliminate the pressure put on Asia Optical by Kodak."  The e-mail also stated that Fuji Photo Film had "re-communicated to [Kodak] that [Fuji Photo Film] will fulfill its promise to handle the Kodak patent pertaining to the DSC supplied by Asia Optical to [Fuji Photo Film]."

As a result of these representations, AO entered into a standstill agreement with Kodak.  Under the standstill agreement, AO paid $1,500,000 to Kodak in New York as consideration for Kodak forbearing on pursuing its royalty claims against AO while Fuji Photo Film attempted to resolve the

royalty claims with Kodak.  Neither Fuji Photo Film nor Fuji as
its successor-in-interest resolved the royalty dispute with
Kodak.

II.  AO's Prior Lawsuit in New York State Supreme Court

On October 2, 2009, AO brought suit against Fuji and three
Fuji American subsidiaries, including FNAC, in New York State
Supreme Court, Westchester County, alleging that Fuji had
breached an agreement with AO to indemnify AO from Kodak's
royalty demands.  AO discontinued the Westchester County action
on March 1, 2010.

On February 10, 2010, AO filed a second lawsuit against
Fuji in New York State Supreme Court, this time in New York
County (the "February 2010 Complaint").  The February 2010
Complaint is virtually identical to the AO Complaint in this
suit.  Fuji moved to dismiss the February 2010 Complaint for
lack of personal jurisdiction on September 30.  In its
opposition, AO relied solely upon N.Y. C.P.L.R. § 302(a)(1) for
personal jurisdiction under New York's long-arm statute.[2]  AO's

---

[2] In its opposition brief, AO framed its personal jurisdiction
argument in the following terms:  "[Fuji] agreed to negotiate
and settle the dispute directly with Kodak, paying any amounts
necessary, and holding [AO] harmless.  [Fuji] projected itself
into New York to negotiate the dispute directly with Kodak.  In
doing so, [Fuji] purposefully availed itself of the privilege of
conducting activities in New York."

opposition brief discussed both the September 9 Letter and the May 2 E-mail.

After the personal jurisdiction issue was briefed, Justice Jeffrey K. Oing listened to oral argument by the parties at a hearing on June 3, 2011.  Counsel for AO argued that the court could exercise personal jurisdiction over Fuji because Fuji "projected itself into New York by undertaking to resolve the dispute in New York between Kodak and AO."  AO's counsel further stated that "we're aware of . . . at least five instances of communications between Fuji and between Kodak directly addressing this issue of resolving the dispute.  And . . . Fuji purposefully projected itself in New York by faxes, by telephone conversations, by communications."  Justice Oing, however, expressed skepticism that the nature of the forum state contacts implicated by AO's claim were sufficient to create personal jurisdiction:  "You're telling me that it went from Fuji to [AO], saying:  Don't worry; we're going to resolve all this. We're in contact with Kodak right now.  We're taking care of all the business that we're doing in New York. . . .  But how does . . . trying to get involved in trying to resolve the dispute . . . result in them consenting to jurisdiction[?]"  Justice Oing then granted Fuji's motion to dismiss:  "My problem here is that [AO] is attempting to take [negotiations between Fuji and Kodak in New York] and try to bootstrap or piggyback on that to get a

jurisdictional basis over Fuji defendants using the 302(a)(1),
the single-transaction situation.  I don't find that that is the
appropriate means to get jurisdiction in this case."  A written
order followed on June 7.

Justice Oing allowed AO to make an application for
jurisdictional discovery, which the parties briefed in advance
of a July 6 hearing.  At that hearing, Justice Oing denied AO's
request for jurisdictional discovery, characterizing AO's
arguments as a "rehashing" of its June 3 arguments.[3]  A written
order followed on July 8, 2011.  AO did not appeal from the June
7 or July 8 orders.

PROCEDURAL HISTORY

Kodak filed the instant lawsuit against AO on August 26,
2011.  Kodak seeks royalties owed to it by AO, pursuant to the
2004 PLA, based on AO's manufacture of DSCs for Fuji Photo Film.
Kodak moved for partial summary judgment against AO on December
16.  On March 16, 2012, the Court granted partial summary

---

[3] AO argued at the July 6 hearing that it was "not looking to
bootstrap because [§ 302(a)(1)] speaks to a contract anywhere .
. . where there are services that are provided in New York.  The
service that was provided in New York was Fuji's service to [AO]
of resolving the patent licensing dispute."  Justice Oing,
however, repeated his earlier skepticism that the Fuji-Kodak
negotiations were sufficient to establish personal jurisdiction
over Fuji in connection with AO's claims:  "[Y]our argument is
essentially Fuji and Kodak transacted business here in New York,
they did everything here.  [AO is] a stranger to this
transaction."

judgment to Kodak, holding that the 2004 PLA obligated AO to pay Kodak royalties on the Fuji DSCs.  2012 WL 917393, at *6.

On December 7, 2011, AO filed its third-party complaint against Fuji and FNAC.  The third-party defendants moved to dismiss the AO Complaint on February 17.  The motion became fully submitted on April 3.

DISCUSSION

The third-party defendants have moved to dismiss the AO Complaint (1) against Fuji for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Fed. R. Civ. P., and (2) against FNAC for failure to state a claim, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

I.  Personal Jurisdiction

Fuji moves to dismiss AO's claims against it for lack of personal jurisdiction.  In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state.  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.  Fed.R.Civ.P. 4(k)(1)(a). "If the exercise of jurisdiction is appropriate under [the

state's statutes], the court then must decide whether such exercise comports with the requisites of due process." <u>Whitaker v. American Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).

New York's long-arm statute provides for specific personal jurisdiction over certain non-domiciliaries. N.Y. C.P.L.R. § 302(a). Section 302(a)(1) allows the exercise of personal jurisdiction over an out-of-state defendant if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).

> [A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1), as long as he engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws.

<u>Chloe v. Queen Bee of Beverly Hills, LLC</u>, 616 F.3d 158, 169 (2d Cir. 2010) (citation omitted). "[T]he second clause of section 302(a)(1) provides for jurisdiction where the defendant has only minimal contacts with New York but contracts to deliver goods or services to the state." <u>Id.</u> at 169-70.

Fuji argues that AO is collaterally estopped by Justice Oing's June 7, 2010 order from asserting personal jurisdiction over Fuji in New York in connection with the claims in the AO Complaint. To determine whether collateral estoppel applies to

9

a New York state court judgment, federal courts look to New York

law.  See In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).[4]

> Under New York law, collateral estoppel bars
> relitigation of an issue when (1) the identical issue
> necessarily was decided in the prior action and is
> decisive of the present action, and (2) the party to
> be precluded from relitigating the issue had a full
> and fair opportunity to litigate the issue in the
> prior action.

Id.  "Collateral estoppel is an equitable doctrine -- not a

matter of absolute right.  Its invocation is influenced by

considerations of fairness in the individual case."  King v.

Fox, 418 F.3d 121, 130 (2d Cir. 2005) (citation omitted).  "The

party asserting issue preclusion bears the burden of showing

that the identical issue was previously decided, while the party

against whom the doctrine is asserted bears the burden of

showing the absence of a full and fair opportunity to litigate

in the prior proceeding."  Colon v. Coughlin, 58 F.3d 865, 869

(2d Cir. 1995).

To resolve whether the doctrine of collateral estoppel bars

AO from asserting personal jurisdiction over Fuji in New York in

connection with AO's claims, it is necessary to determine (1)

whether the personal jurisdiction issues presented before

---

[4] The terms "collateral estoppel" and "issue preclusion" are used
interchangeably to describe the same doctrine under New York
law.  See, e.g., ABN AMRO Bank, N.V. v MBIA Inc., 17 N.Y.3d 208,
226 (2011).  The Supreme Court has advised that "issue
preclusion" is the correct term to use in describing the federal
common law doctrine.  See Taylor v. Sturgell, 553 U.S. 880, 892
n.5 (2008).

Justice Oing and before this Court are identical; (2) whether Justice Oing necessarily decided the issue of personal jurisdiction over Fuji against AO in a manner that would be decisive in the present action; and (3) whether AO had a full and fair opportunity to litigate personal jurisdiction before Justice Oing.

Personal jurisdiction issues in the state court action and before this Court are identical.  In both fora, AO has attempted to assert personal jurisdiction over Fuji pursuant to § 302(a)(1) of New York's long-arm statute.[5]  Before Justice Oing, AO asserted personal jurisdiction over Fuji based upon the alleged indemnification agreement and Fuji's attempts to resolve Kodak's royalty demand directly with Kodak.  AO asserts the same basis for personal jurisdiction here.  AO does not argue that the theories of personal jurisdiction pursued in both actions are not identical.  There are likewise "no significant factual differences" between the personal jurisdiction issue litigated before Justice Oing and presented to this Court.  Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 457 (1985).

---

[5] In its state court complaint, AO asserted personal jurisdiction based upon N.Y. C.P.L.R. § 301 and § 302(a)(2).  In briefing and oral argument before Justice Oing, however, AO clarified that it was seeking to establish personal jurisdiction over Fuji based solely upon § 302(a)(1).  Similarly, while AO's third-party complaint alleges personal jurisdiction pursuant to § 301 and § 302(a)(1), in AO's opposition brief it relies solely upon § 302(a)(1).

Similarly, AO does not dispute that Justice Oing necessarily decided the issue of personal jurisdiction over Fuji in granting Fuji's motion to dismiss.  It is likewise undisputed that finding a lack of personal jurisdiction over Fuji would be decisive in this action.

Finally, AO had a full and fair opportunity to litigate the personal jurisdiction issue before Justice Oing.  The personal jurisdiction issue at the heart of Fuji's present motion to dismiss was briefed to Justice Oing, and decided against AO after oral argument.  After another round of briefing and oral argument, Justice Oing denied AO's subsequent application for jurisdictional discovery.  Importantly, AO chose not to appeal Justice Oing's rulings.

Furthermore,

> [f]actors to be considered when determining whether there was a full and fair opportunity to litigate the issue in the prior action include the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.

King, 418 F.3d at 130 (citation omitted).  Most of these factors weigh strongly in favor of finding that the personal jurisdiction issue was fully and fairly litigated before Justice Oing.  There is no significant distinction between the size of the claims; indeed, the primary relief sought in both is a

12

declaratory judgment that Fuji must indemnify AO.  AO initiated
the state court action and sought to hale Fuji into a New York
court.  The parties are represented by the same attorneys in
each action.  The applicable law, § 302(a)(1) of New York's
long-arm statute, is the same in both proceedings.  Future
litigation on the issue was reasonably foreseeable to AO,
because any suit brought by Kodak to enforce the 2004 PLA would
likely implicate Fuji's alleged indemnification of AO.  AO's
counsel referred to that possibility when he noted in oral
argument to Justice Oing that Kodak had "not yet brought suit;
we hope that they don't bring suit."

Despite this record, AO argues it should not be barred
from relitigating the issue of whether a court sitting in New
York has personal jurisdiction over Fuji.  AO first contends
that there is no identity of issues between the personal
jurisdiction questions presented in state court and before this
Court because significant new facts have emerged following
dismissal of the state court lawsuit.  AO argues that it has
uncovered evidence of new communications, primarily e-mails,
between Fuji employees and New York-based Kodak employees
relating to Fuji's attempts to resolve Kodak's royalty demand
directly with Kodak.  These communications date primarily from
2005-07, the period covered by the Fuji-Kodak communications in
evidence before Justice Oing.  Indeed, at oral argument before

Justice Oing, AO's counsel stated that AO was aware of at least five "instances of communications between Fuji and between Kodak directly addressing this issue of resolving the dispute."  AO's new evidence does not concern events postdating the state court dismissal or substantially altering the personal jurisdiction analysis.  Rather, its new evidence is cumulative; the personal jurisdiction issue presented to this Court requires fundamentally the same inquiry as Justice Oing performed.[6]

AO argues, citing Pohlman v. Bil-Jax, Inc., 176 F.3d 1110 (8th Cir. 1999), that a federal court should reconsider a state court's personal jurisdiction decision where new facts are alleged.  But the Pohlman court merely observed that district courts should not mechanically accord collateral estoppel effect to state court personal jurisdiction rulings, because "critical jurisdictional facts [may] have changed in the interim."  Id. at 1113.  As an example of such a change, the court suggested a

---

[6] AO also points to evidence that Fuji employees traveled to New York on several occasions prior to the filing of the state court complaint to engage in broad discussions about the possibility of Fuji and Kodak entering a patent licensing agreement.  One aspect of these discussions may have been an attempt to resolve outstanding third-party royalty disputes.  That Fuji employees may have visited New York to conduct negotiations with Kodak principally pertaining to the Fuji-Kodak bilateral relationship is not a significant new fact for purposes of avoiding collateral estoppel.  Indeed, Justice Oing recognized that Fuji had entered extended negotiations with Kodak over the two companies' patent licensing interests, but found AO's argument that these negotiations established personal jurisdiction over Fuji for purposes of AO's claims to be "bootstrapping."

situation in which a previously non-resident defendant moves into the forum state and is personally served with a summons for the second suit in the forum state.  Id.  AO does not point to any significant intervening event between the dismissal of its state court suit and the filing of its third-party complaint that alters critical jurisdictional facts.

AO also points to several events that have occurred since dismissal of the state court action that AO claims alter the personal jurisdiction analysis and therefore prevent collateral estoppel.  Specifically, AO notes that Kodak is a party to this suit.  Additionally, AO points out that Kodak and Fuji have filed separate patent infringement suits against each other in New York federal courts, and that those suits implicate several of the patents licensed by AO from Kodak.  But, Kodak's decision to file suit against AO does not create personal jurisdiction over Fuji in a New York court, and AO does not attempt to explain why it would do so.  Fuji's consent to jurisdiction in the Kodak patent infringement cases also is not relevant to the question of whether courts in New York may assert personal jurisdiction over Fuji to resolve the AO claims at issue here. See Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case . . . extends to that case alone.").

AO also disputes that it was afforded a full and fair
opportunity to litigate the personal jurisdiction issue in state
court.  AO emphasizes its inability to take jurisdictional
discovery.  As AO notes, "[a]n opportunity to litigate is
neither full nor fair when a litigant is denied discovery,
available in the ordinary course, into matters going to the
heart of his claim."  Locurto v. Giuliani, 447 F.3d 159, 171 (2d
Cir. 2006).  But plaintiffs are not entitled to jurisdictional
discovery as a matter of course when confronted with a motion to
dismiss for lack of personal jurisdiction.  Rather, a federal
court may deny jurisdictional discovery where the plaintiff has
failed to make out a "prima facie case for jurisdiction."  Best
Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007).
While New York courts apply a more lenient standard, see, e.g.,
Benifits By Design Corp. v. Contractor Management Services, LLC,
75 A.D.3d 826, 830 (3d Dep't 2010) (plaintiffs are required to
demonstrate that they have made a "sufficient start" and that
their position is not "frivolous" (citation omitted)), that does
not suggest that AO can escape the application of the collateral
estoppel bar.

Justice Oing received briefing and heard oral argument
before denying AO's request for jurisdictional discovery.
During the July 6, 2011 hearing before Justice Oing, AO had the
opportunity to argue that it had made a "sufficient start" to

demonstrating personal jurisdiction, and indeed AO's counsel pressed the point.  Most significantly, AO chose not to appeal the dismissal of its lawsuit.  Under the circumstances, AO cannot be said to have been deprived a full and fair opportunity to litigate the existence of personal jurisdiction over Fuji.

Finally, AO argues that its discovery of new evidence not available in the state court proceeding compels the conclusion that AO did not receive a full and fair opportunity to litigate. Citing Khandhar v. Elfenbein, 943 F.2d 244 (2d Cir. 1991), AO argues that "[i]f significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence." Id. at 249.  In Khandhar, the plaintiff had participated in an arbitration and received an award for injuries suffered in a vehicle accident, including "the permanency of the problems caused by the accident which remain even after surgery was performed." Id. at 246.  The plaintiff then sued the doctors who performed that surgery, and learned that they had operated on the wrong spinal disc and that a second surgery might be necessary.  Id.  The Second Circuit held that the recommendation of the need for a second surgery constituted new evidence that precluded application of the doctrine of collateral estoppel.  Id. at 249.

Khandar is inapposite.  AO pressed the precise personal jurisdiction theory before Justice Oing that it relies upon here.  As previously discussed, AO's new evidence does not significantly alter the personal jurisdiction analysis in which Justice Oing engaged.  The record before the Court on this motion does not undermine the conclusion that AO received a full and fair opportunity to litigate the personal jurisdiction issue.[7]

## II.  Unjust Enrichment

FNAC moves to dismiss, pursuant to Rule 12(b)(6), Fed. R. Civ. P., AO's unjust enrichment claim.[8]  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id.  (citation omitted).

---

[7] Because the claims against Fuji are dismissed for lack of personal jurisdiction, it is unnecessary to consider the third-party defendants' alternative argument that the claims against Fuji should be dismissed under the doctrine of forum non conveniens.

[8] AO attempts to support only its unjust enrichment claim against FNAC in its opposition brief, effectively abandoning the other claims in the AO Complaint against FNAC.

> The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are merely
> consistent with a defendant's liability, it stops
> short of the line between possibility and plausibility
> of entitlement to relief.

Id. Applying this plausibility standard is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense." Id. at 1950. "To survive
dismissal, the plaintiff must provide the grounds upon which his
claim rests through factual allegations sufficient to raise a
right to relief above the speculative level." ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

When considering a motion to dismiss under Rule 12(b)(6), a
trial court must "accept all allegations in the complaint as
true and draw all inferences in the non-moving party's favor."
LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475
(2d Cir. 2009). A complaint must do more, however, than offer
"naked assertions devoid of further factual enhancement," and a
court is not "bound to accept as true a legal conclusion couched
as a factual allegation." Iqbal, 129 S.Ct. at 1949-50.
Accordingly, a court may disregard "threadbare recitals of a
cause of action's elements, supported by mere conclusory
statements." Id. at 1940.

"Under New York law, a plaintiff asserting a claim of
unjust enrichment must show that the defendant was enriched at

19

the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." Bigio v. Coca-Cola Co., 675 F.3d 163, 176-77 (2d Cir. 2012) (citation omitted).  "[A] cause of action for unjust enrichment arises when one party possesses money that in equity or good conscience they should not have obtained or possessed because it rightfully belongs to another." Strong v. Strong, 277 A.D.2d 533, 534 (3d Dep't 2000) (citation omitted).  The "essence of such a claim is that one party has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).  The benefit derived by the defendant at the plaintiff's expense must be "specific and direct." Id.

AO has failed to state a claim for unjust enrichment against FNAC.  The AO Complaint contains two allegations with respect to FNAC.  First, AO alleges that FNAC was involved in preparing the designs and specifications for the Fuji DSCs. Second, AO alleges that the Fuji DSCs were distributed in the United States through FNAC.  These allegations are insufficient to allege that FNAC has received money that belongs to AO.

AO does not allege that any of its money has been unjustly delivered to or retained by any other party, including FNAC.  To the extent that AO's theory is that FNAC profited from the continued North American sales of the Fuji DSCs, FNAC's position

is identical to that of any other distributor who derived some
benefit from the continued sales of the Fuji DSCs.  And again,
any money that such a distributor received was not received from
AO, much less unjustly retained by the distributor.  Unjust
enrichment requires a direct and specific link between a
plaintiff's loss and the defendant's gain as a threshold matter,
before considering whether equity supports a disgorgement remedy
for the plaintiff.  That connection is entirely absent here.
FNAC's motion to dismiss is granted.


CONCLUSION

     The third-party defendants' February 17 motion to dismiss
the AO Complaint against FH and FC for lack of personal
jurisdiction is granted.  The third-party defendants' February
17 motion to dismiss the AO Complaint against FNAC for failure
to state a claim is also granted.  The Clerk of Court shall
remove FH, FC, and FNAC as third-party defendants in this case.

     SO ORDERED:

Dated:    New York, New York
          June 13, 2012


                                    _____
                                         DENISE COTE
                              United States District Judge


                               21