```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
EASTMAN KODAK COMPANY,                    :
                                          :
                    Plaintiff,            :    11cv6036 (DLC)
                                          :
               -v-                        :    OPINION & ORDER
                                          :
ASIA OPTICAL CO., INC.,                   :
                                          :
                    Defendant.            :
                                          :
------------------------------------------X
```

APPEARANCES:

For Plaintiff:
Robert J. Gunther
Michael J. Summersgill
Jordan L. Hirsch
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

For Defendant:
Christopher Kao
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304

DENISE COTE, District Judge:

The plaintiff Eastman Kodak Company ("Kodak") won a judgment in this Court against the defendant Asia Optical Co., Inc. ("AO") in 2012. In 2014, AO brought suit against Kodak in China to obtain reimbursement of money it paid to Kodak pursuant to that judgment. Kodak now seeks an anti-suit injunction against AO to halt the Chinese lawsuit. For the following reasons, Kodak's motion is granted.

**BACKGROUND**

The factual background of this case is laid out in several Opinions of this Court, including in the March 16, 2012 Opinion granting partial summary judgment in Kodak's favor, Eastman Kodak Co. v. Asia Optical Co., Inc., 11cv6036 (DLC), 2012 WL 917393 (S.D.N.Y. Mar. 16, 2012) ("March 2012 Opinion"), and the June 13, 2012 Opinion dismissing the third-party complaint against Fujifilm ("Fuji"). Eastman Kodak Co. v. Asia Optical Co., Inc., 11cv6036 (DLC), 2012 WL 2148198 (S.D.N.Y. June 13, 2012) ("June 2012 Opinion"). Familiarity with the March and June 2012 Opinions is assumed.

Kodak owns many patents associated with digital camera technology. It licenses its patents to digital camera manufacturers, including companies like AO that assemble cameras for sale under other companies' brand names. In April 2009, Kodak and AO entered into a patent licensing agreement ("PLA") whereby Kodak licensed its full set of digital camera patents to AO in exchange for royalty payments. A written modification ("Side Letter") executed contemporaneously with the PLA described the circumstances under which AO may not be required to pay royalties.

AO sold some of cameras it manufactured to Fuji and contends that Fuji and not AO is responsible for paying Kodak the patent licensing fees associated with those cameras. This

2

dispute has spawned litigation in New York State court, this Court, Japan, and now China.  A description of this litigation follows.

**1. Asia Optical's New York State Lawsuits Against Fuji**

AO sued Fuji twice in New York State court, alleging that Fuji owed a duty to indemnify AO for any royalties it owed Kodak.  On October 2, 2009, AO brought suit against Fuji and three of Fuji's American subsidiaries in New York State Supreme Court, Westchester County, but discontinued the action on March 1, 2010.  On February 10, 2010, AO filed a second lawsuit against Fuji in New York State Supreme Court, this time in New York County.

Fuji's motion to dismiss the second New York State action for lack of personal jurisdiction was granted at a hearing held on June 3, 2011, and by written order on June 7, 2011.  Following the dismissal, AO made an application for jurisdictional discovery.  This application was denied on July 8, 2011.  AO did not appeal the decisions to dismiss the action or to deny jurisdictional discovery.

**2. Kodak's Federal Litigation Against Asia Optical**

Kodak commenced this federal action against AO on August 26, 2011, seeking royalty payments pursuant to the PLA.  In the March 2012 Opinion, this Court granted partial summary judgment for Kodak and held <u>inter alia</u> that the Side Letter only exempts

3

AO from royalty payments it owes to Kodak when its contract assembly work is performed for a Kodak "licensee," and that Fuji was not a Kodak licensee.[1] AO was therefore responsible for paying royalties for the digital cameras it manufactured for Fuji. In determining that AO was responsible for paying royalties to Kodak, this Court rejected several AO arguments, including that all "pure contract assembly" work is exempt from the PLA's royalty requirements even if it is not done for a Kodak licensee.

---

[1] The primary issue addressed in the March 2012 Opinion is whether AO was obligated, under Section 5.6 of the PLA and Side Letter, to pay Kodak royalties for cameras AO manufactured on Fuji's behalf. Section 5.6 of the PLA provides:

> In the case where Digital Cameras are sold by Asia Optical to an existing Kodak licensee under the Digital Camera Portfolio, and sold under that licensee's Trademark or Tradename, then it shall be presumed that Asia Optical shall be responsible for the royalty payment to Kodak for those Digital Cameras under this Agreement. However, if the existing licensee elects to pay Kodak, and pays Kodak in full, for Digital Cameras made and provided by Asia Optical[,] those Digital Cameras shall not be included in calculating Net Sales under this Agreement so long as that licensee pays in full Kodak royalties under its Agreement with Kodak. Asia Optical shall indicate on its royalty report the model Digital Cameras excluded from royalties due under this clause and the name of the existing Kodak Licensee responsible for payment of the royalty.

(Emphasis added.) The Side Letter states, inter alia, that "[p]ure contract assembly without design responsibility, or simple provision of parts does not obligate [AO] to pay a royalty."

4

AO filed a third-party complaint in this lawsuit against Fuji on December 7, 2011, asserting that Fuji had agreed to indemnify AO for the royalties owed to Kodak under the PLA. The third-party complaint was virtually identical to AO's New York State complaints. Fuji's motion to dismiss the third-party complaint was granted in the June 2012 Opinion. That Opinion held that AO was collaterally estopped from relitigating the existence of personal jurisdiction over Fuji. Eastman Kodak, 2012 WL 2148198, at *3-6.

With these decisions, all that remained to be litigated was the amount of damages. A damages trial was scheduled to begin on July 23, 2012, but the parties stipulated to a damages amount on July 12. Accordingly, on July 18, 2012, judgment was entered in favor of Kodak against AO in the amount of $33,726,531 ("Final Judgment"). AO appealed from the Final Judgment on the ground that the PLA and Side Letter are ambiguous, and extrinsic evidence would show that this Court's interpretation of PLA § 5.6 was contrary to the parties' intentions. On May 23, 2013, the Court of Appeals for the Second Circuit affirmed the Final Judgment.

AO delayed paying the Final Judgment. AO contended it was unable to pay the Final Judgment but resisted post-judgment requests aimed at discovering its financial status. Following motion practice and conferences with the Court, and facing

5

imposition of contempt sanctions, AO agreed to pay the Final Judgment with interest in four equal installments.  A November 12, 2013 Order memorialized the payment schedule and revised the amount owed to account for interest and royalties that had accrued following the entry of the Final Judgment ("November 2013 Order").  The November 2013 Order set the total amount to be paid as $37,472,411.  It required AO to pay Kodak by December 31, 2013, March 31, 2014, June 30, 2014, and September 30, 2014.

On December 22, 2014, the parties informed the Court by letter than all payments had been made pursuant to the November 2013 Order, and requested that the matter be closed.  This case was closed on January 12, 2015.

**3. Asia Optical's Japanese Arbitration Against Fuji**

After entry of the Final Judgment, AO brought an arbitration action against Fuji in Japan, seeking indemnification for the amount AO owed to Kodak in the Final Judgment.  The Japanese arbitration panel denied AO's claims on February 28, 2014.  On March 11, 2015, the Tokyo District Court denied AO's appeal.  An appeal before the Tokyo High Court is pending.

AO asserts in its memorandum of law in the instant motion that Fuji took the position in the Japanese arbitration proceeding that it had no duty to indemnify AO because a 2013 patent licensing agreement it entered with Kodak, and the fees

6

paid to Kodak pursuant to that agreement, "covered" the digital cameras made by AO for Fuji.  AO explains that it has not presented any documents from Fuji or its arbitration with Fuji to support this assertion because the arbitration documents have been designated as confidential.

It is undisputed that on February 1, 2013, Kodak and Fuji entered into a patent licensing agreement.  Kodak submitted a copy of that agreement in support of its current motion for an injunction.  It is filed under seal, although a complete copy has been provided to AO's outside counsel, and certain language critical to the current dispute between Kodak and AO has been provided to AO's in-house counsel.[2]  AO acknowledges that Kodak's interpretation of the terms of the agreement between Kodak and Fuji is inconsistent with what AO describes as Fuji's position in the Japanese arbitration.

**4. Asia Optical's Chinese Lawsuit Against Kodak**

On July 28, 2014, AO and Sintai Optical (Shenzhen) Co., Ltd. ("Sintai") began a lawsuit against Kodak in China, but did not immediately serve Kodak.[3]  The complaint's single claim

---

[2] The passage disclosed to AO's inside counsel reads: [REDACTED]

[3] Sintai is apparently a Chinese subsidiary of AO.  It has no other connection to this dispute.

against Kodak is premised on Kodak's alleged breach of the PLA, specifically Section 5.6 of the PLA,[4] and it seeks reimbursement from Kodak in the amount of $12,368,103.[5]  It contends that AO learned that Fuji and Kodak had entered into a patent licensing agreement, which paid royalties to Kodak for the same digital cameras that were the subject of the federal litigation, and that it would be unjust for Kodak to receive royalty payments from both AO and Fuji for the manufacture and sale of the same cameras.[6]  The complaint names Fuji as a "third-party," but seeks no damages from Fuji.

AO served the Chinese complaint on Kodak on January 16, 2015, which was four days after this federal action was closed pursuant to a joint request from the parties.  On March 3, 2015, Kodak requested that the instant action be reopened.  The case was reopened on March 6.

---

[4] Section 5.6 of the PLA was at the heart of the parties' dispute before this Court.  It is quoted above.

[5] The complaint asserts that AO paid this amount to Kodak pursuant to the Final Judgment.  But, the Final Judgment was entered for $33,726,531, and the November 2013 Order is in the amount of $37,472,411.

[6] The Chinese complaint asserts that the four installment payments were made to Kodak between December 18, 2013 and March 26, 2014, which would predate the filing of the Chinese complaint.  This is an error.  The installment payments to Kodak extended to September 2014.

8

Kodak filed its motion seeking an anti-suit injunction on March 24. In support of its motion, it has provided copies of its agreement with Fuji, AO's Chinese complaint, and an email exchange between Kodak and AO in May and June 2014.[7] AO did not submit any exhibits with its opposition to this motion. The motion was fully submitted on April 17.

## DISCUSSION

A district court has the power to enjoin a party before it from pursuing litigation in a foreign jurisdiction. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). While concurrent actions are ordinarily permitted, an anti-suit injunction may be appropriate when used to protect the jurisdiction and judgment of the enjoining court. Id. at 654-55.

But, "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint." Id. at 652 (citation omitted). Applying a test identified in China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987), this Circuit has consistently held that an anti-suit injunction may only be granted where two threshold requirements are met: first,

---

[7] The email correspondence was submitted as part of Kodak's application to reopen the case, and is referenced in Kodak's briefing.

9

the parties must be the same in both proceedings, and second, resolution of the case before the enjoining court must be dispositive of the action to be enjoined.  See, e.g., Paramedics, 369 F.3d at 652.

If the threshold requirements are met, courts weigh five additional factors: (1) the threat to the enjoining court's jurisdiction posed by the foreign action; (2) the potential frustration of strong public policies in the enjoining forum; (3) the vexatiousness of the foreign litigation; (4) the possibility of delay, inconvenience, expense, inconsistency, or a race to judgment; and (5) other equitable considerations. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 119-20 (2d Cir. 2007).  While all of the discretionary factors must be considered, the first two factors -- whether the foreign action threatens the enjoining forum's jurisdiction or its strong public policies -- are given greater weight.  Id. at 119.  The discretionary factors will tend to weigh in favor of an anti-foreign-suit injunction "that is sought to protect a federal judgment."  Id. at 120.  "There is less justification for permitting a second action . . . after a prior court has reached a judgment on the same issues."  Id. (citation omitted).

**I. The Parties in the Federal and Chinese Litigation**

The first threshold requirement is that the parties are the same in both matters. To satisfy this requirement, the parties need not be identical. See Paramedics, 369 F.3d at 652-53. This requirement is met if the parties are "sufficiently similar." See id. at 652; see also In re Millenium Seacarriers, Inc., 458 F.3d 92, 97 n.5 (2d Cir. 2006)

The first requirement is satisfied. The presence of Sintai as an additional plaintiff does not alter this conclusion. AO has failed to explain what role Sintai has in this dispute or why it is a co-plaintiff in the Chinese action.[8] The Chinese complaint only requests that Kodak be ordered to pay damages to AO.

Similarly, the presence of Fuji as a "third-party" does not preclude a finding that the parties are the same in both the U.S. and Chinese litigation. Kodak is the only defendant named in the Chinese action, and it is the only party from whom AO seeks damages. To support its claim against Kodak, AO asserts

---

[8] The Chinese complaint lists the additional plaintiff as Sintai Optical (Shenzhen) Co., Ltd. The text of the complaint describes a company Dongguan Sintai Optical Co., Ltd. as a company that concluded "Commissioned Development Agreements" with Fuji. The complaint explains that AO also concluded seven Commissioned Development Agreements with Fuji. There is no allegation linking either Sintai entity to a transaction between AO and Kodak or to a transaction between AO and Fuji. Unlike the other parties, the plaintiff Sintai is a Chinese company. It is apparently a Chinese subsidiary of AO.

that Kodak violated the PLA, which was entered between AO and Kodak.  Fuji is not a party to the PLA.

Fuji is named in the Chinese action as a "third-party."[9] While AO has not explained what role a named "third-party" plays in Chinese litigation, it would appear to be a party that possesses relevant evidence.  According to the translation of the complaint provided to the Court, Fuji assured AO in approximately 2005 that Fuji would be responsible for any royalties owed to Kodak on the cameras that AO assembled for Fuji and that Fuji itself told Kodak to contact Fuji directly about such royalties.[10]  The Chinese complaint also asserts that when Fuji and Kodak executed a patent rights agreement in 2013, they agreed that Fuji "may not pay the royalty repeatedly."  The complaint adds that the principle prohibiting "dual unjust enrichments" should allow AO to recover damages from Kodak.  In sum, AO has not sued Fuji in the Chinese action and does not seek to recover damages from it.

---

[9] Fuji's role in the Chinese litigation is similar to the role it played in the Federal litigation.  In this Court, AO sought to implead Fuji, asserting that it was Fuji and not AO that owed money to Kodak, and that AO should not be required to pay Kodak anything.  In the Chinese litigation, AO asserts that Fuji was responsible for paying Kodak, that it has paid Kodak, and that Kodak should repay AO the money it obtained from AO through the Final Judgment.

[10] This is similar to assertions that AO made during its Federal litigation with Kodak.

AO contends that the parties in the Federal and Chinese litigation differ because Fuji is an "indispensable" party in the Chinese litigation.  This argument fails.  Fuji is no more indispensable to the Chinese litigation that AO has brought against Kodak than it was to the Federal litigation Kodak brought against AO.  The gravamen of AO's complaint in the Chinese litigation is that Kodak breached the PLA by accepting double royalties and should repay AO.  The key factual question -- whether Kodak received double royalties -- may be resolved without Fuji's presence in the litigation, and the key legal question -- whether the receipt of double royalties violates the PLA –- involves an agreement to which Fuji is not a party.

AO also argues that, Fuji having been dismissed from the Federal litigation, it would be "grossly unfair" to enjoin AO.  AO does not explain in what way the entry of the requested injunction would be unfair.  AO has not brought any suit against Fuji in China to recover damages from Fuji.  To the extent that AO wishes to sue Fuji, it may do so in another jurisdiction, as it did when it brought an arbitration proceeding against AO in Japan.  There is no unfairness in enjoining litigation against Kodak in China simply because AO did not succeed in joining Fuji as a defendant in a lawsuit in America.

**II. The Federal Litigation Is Dispositive of the Chinese Litigation.**

The second threshold factor requires the resolution of the case before this Court to be dispositive of the action to be enjoined. In determining whether a previous action is dispositive of a subsequent one, a court "must determine the substance of the case before the enjoining court." Karaha Bodas, 500 F.3d at 121 (citation omitted). A court must also examine whether the judgment sought to be protected was "dispositive" of the subsequent action. Id. There is no requirement that the two actions be identical. See id. at 121-22; Paramedics, 369 F.3d at 653; see also Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 716 F.3d 586, 591 (Fed. Cir. 2013); Applied Med. Distribution Corp. v. Surgical Co. BV, 587 F.3d 909, 914 (9th Cir. 2009).

The judgment entered in the instant action is dispositive of the claim that AO is pursuing in the Chinese litigation. Both actions are premised on patent royalty payments due to Kodak for the same set of cameras that AO sold to Fuji. In both actions, AO relies on the PLA, and its contention that Kodak breached the PLA, in particular PLA § 5.6, by seeking royalty payments from AO for cameras that AO provided to Fuji. Through the Chinese litigation, AO seeks to unwind the judgment entered

14

against it in the Federal litigation and to recover money it paid to Kodak pursuant to the Final Judgment.

To the extent that AO believes that Kodak's agreement with Fuji entitles it to vacate the judgment entered against it in this Court, it could have pursued that relief in this Court.  It bears noting that, while Kodak's agreement with Fuji post-dates the Final Judgment, activity in the Federal litigation did not cease with the entry of the Final Judgment.  Rather, Kodak had to move to compel payment from AO after the Final Judgment was entered.  AO's final payment to Kodak was not made until September 2014, months after AO filed its complaint in China, and this case was not closed until January 2015.

AO argues that the Federal litigation is not dispositive of the Chinese litigation because AO's Chinese lawsuit relies on the existence of the 2013 agreement between Kodak and Fuji, which purportedly paid Kodak royalties for the same digital cameras that were the subject of the Federal litigation, and on AO's contention that Kodak should not be paid twice for the same use of its patents.  As AO emphasizes, the 2013 licensing agreement did not exist at the time the Final Judgment was entered.

AO is correct that it is relying in part in its Chinese action on events that had not occurred when the Final Judgment was entered.  But, those new facts are offered by AO to assert

15

once again that it had no obligation to pay Kodak licensing fees under the PLA.  In both lawsuits, AO relies on its reading of the PLA and its contention that Fuji is the party that owes royalty payments to Kodak.  AO may have a right to reimbursement from Fuji for the money it paid to Kodak, but the extent of its separate obligations to Kodak, as they arise under the PLA, has already been litigated and cannot be collaterally attacked by filing a lawsuit in another jurisdiction.

### III. Additional China Trade Factors

As the threshold factors are met, this Opinion turns to the discretionary China Trade factors.  Each of these factors supports entry of the requested injunction.

The Chinese litigation seeks reimbursement of money that this Court ordered paid as part of the Final Judgment.  This threatens to undermine the judgment of this Court.  Moreover, because the Chinese litigation will require a Chinese court to interpret PLA § 5.6, the same contractual provision addressed in the March 2012 Opinion, permitting the Chinese litigation to go forward threatens to create inconsistent judicial readings of the same contract language.

The Chinese lawsuit also implicates important policies of this jurisdiction favoring finality and disfavoring forum shopping.  See Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 64 (2d Cir. 2007) (forum shopping); Mendes Junior

16

Int'l Co. v. Banco do Brasil, S.A., 215 F.3d 306, 314 (2d Cir. 2000) (finality); Personis v. Oiler, 889 F.2d 424, 426 (2d Cir. 1989) (forum shopping). Kodak is entitled to freedom from further litigation with respect to the issues resolved in the Federal litigation. Kodak received a judgment that was upheld on appeal, and pursued enforcement proceedings to obtain payment. In the course of the Federal litigation, AO was given a full and fair opportunity to be heard and has not argued that it has any grounds to vacate the Final Judgment. Nor has AO explained why its lawsuit in China is anything other than improper forum shopping in an effort to nullify the Final Judgment. China has no connection whatsoever to this dispute. The PLA was entered between AO and Kodak, which are Taiwanese and American companies. Payments under the PLA were received in New York, and the PLA selected New York law to resolve disputes arising under it. AO sold the cameras to Fuji, a Japanese company.

Moreover, unbeknownst to Kodak, AO filed the Chinese lawsuit in the midst of paying Kodak pursuant to the Final Judgment. Rather than seek relief in this Court, AO sought to pursue a lawsuit in a foreign jurisdiction with no connection with the underlying facts. This is the sort of conduct that may properly be described as "vexatious." Karaha Bodas, 500 F.3d at 126.

The Chinese lawsuit will also inconvenience Kodak and impose additional litigation expense on it.  Kodak's principal place of business is in New York, and legal issues concerning the PLA, which underlie both the Federal and Chinese litigation, have already been resolved in this Court and require application of New York law.

AO does not advance any meaningful argument that the consideration of these discretionary factors weighs in its favor.  While AO contends that it is not challenging the Final Judgment or this Court's prior rulings, that is precisely what it seeks to do in the Chinese lawsuit.  It seeks to negate the Final Judgment and retrieve payments that it already made to Kodak under that Judgment.  AO also argues that the Chinese lawsuit is not vexatious because it has a legitimate dispute with Kodak and Fuji.  The legitimacy of its dispute, however, does not render the litigation proper.  That legitimate dispute was litigated to a final judgment in this Court.  Kodak is entitled to the continued enforcement of that judgment.

Because the threshold China Trade requirements are met, and the discretionary factors weigh in favor of an injunction, an anti-suit injunction is appropriate here.  Kodak's motion for such an injunction is granted.

## IV. Ancillary Jurisdiction

AO makes one additional argument against entry of an anti-suit injunction.  It asserts that the Court cannot enter an injunction because it lacks "ancillary jurisdiction" over this matter.  AO is wrong.

A federal court retains the authority to enforce its judgment and the doctrine of ancillary jurisdiction will not divest a court of that authority.  As the Second Circuit has noted,

> While the boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity, . . . <u>federal courts have continuing jurisdiction</u>, grounded in the concepts of res judicata and collateral estoppel, <u>to enjoin a party</u> properly before them from relitigating issues in a non-federal forum that were already decided in federal court.  This source of jurisdiction remains <u>even after a judgment has been satisfied</u> -- regardless of whether . . . the font of jurisdiction for such an injunction is characterized as ancillary or otherwise.

<u>Karaha Bodas</u>, 500 F.3d at 129 (2d Cir. 2007) (citation omitted) (emphasis added).

In <u>Karaha Bodas</u>, the Court of Appeals applied the <u>China Trade</u> test to determine that an anti-suit injunction was appropriate rather than looking to case law describing ancillary jurisdiction.  <u>Id.</u> at 120-28.  AO has not cited, and the Court has not found, any Court of Appeals decision in this Circuit post-dating <u>China Trade</u> that has evaluated the issue of

ancillary jurisdiction separately from the China Trade factors in considering whether an anti-suit injunction should issue. See, e.g., Karaha Bodas, 500 F.3d at 120-28; Ibeto, 475 F.3d at 62-65; LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 199-200 (2d Cir. 2004); Paramedics, 359 F.3d at 652-55.  There is no basis in the case law cited by AO to conclude that the doctrine of ancillary jurisdiction imposes any additional limits on this Court's ability to issue an anti-suit injunction.

## CONCLUSION

The plaintiff's March 24, 2015 motion for an anti-suit injunction is granted.  A scheduling order accompanies this Opinion.

Dated:    New York, New York
          July 23, 2015

_____
DENISE COTE
United States District Judge