UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>                        Judgment-Creditor,<br><br>        v.<br><br>ASIA OPTICAL COMPANY, INC.,<br><br>                        Judgment-Debtor. | Case No. 11-CV-6036 (DLC) |

**ASIA OPTICAL COMPANY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>EMERGENCY</u> MOTION TO STAY PERMANENT INJUNCTION PENDING APPEAL,
OR IN THE ALTERNATIVE, FOR TEMPORARY ADMINISTRATIVE STAY**

TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

      A.      Fujifilm Represents to the Japanese Arbitration Panel that It Paid Kodak Royalties On the DSCs at Issue Under the 2013 Kodak/Fujifilm Agreement. ....... 2

      B.      Asia Optical Brings the Chinese Lawsuit to Recover Royalty Payments Made to Kodak Because Fujifilm Allegedly Paid Those Royalties Already. ......... 3

      C.      This Court Enters a Permanent Injunction Requiring Asia Optical to Dismiss the Chinese Lawsuit With Prejudice, and Asia Optical Appeals. ............. 3

LEGAL STANDARD .................................................................................................................. 4

ARGUMENT ................................................................................................................................ 5

THE COURT SHOULD STAY THE PERMANENT INJUNCTION BECAUSE THE FOUR APPLICABLE FACTORS ARE SATISFIED ............................................................................. 5

I.      Asia Optical Will Suffer Irreparable Injury Absent A Stay Because It Will Be Forced To Irreversibly Abandon All Of Its Claims Pending In A Foreign Court. .............. 5

II.     No Party Will Be Substantially Injured If A Stay Is Issued. ............................................. 6

III.    A Substantial Possibility Exists That Asia Optical Will Prevail On The Merits Of Its Appeal. ......................................................................................................................... 7

IV.    No Public Interest Will Be Harmed By Staying The Injunction ..................................... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Barclay v. Doe*
   207 Fed. App'x. 102 (2d Cir. 2006)........................................................................5

*Blossom S., LLC v. Sebelius*,
   No. 13-CV-6452L, 2014 WL 204201 (W.D.N.Y. Jan. 17, 2014) ............................7

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
   837 F.2d 33 (2d Cir. 1987).............................................................................7, 8, 9

*Hirschfeld v. Board of Elections*,
   984 F.2d 35 (2d Cir.1993).......................................................................................4

*In re Friedberg*,
   1991 WL 259038 (S.D.N.Y. Nov. 25, 1991)........................................................10

*In re Pacific Gas and Elec. Co.*,
   2002 WL 32071634 (N.D. Cal., Nov. 14, 2002) ..................................................10

*In re World Trade Center Disaster Site Litigation*,
   503 F.3d 167 (2d Cir. 2007)....................................................................................4

*Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.)
   Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cnty. of Chemung, New
   York*,
   812 F. Supp. 2d 273 (W.D.N.Y. 2011) ...................................................................7

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986)......................................................................................6

*Nken v. Holder*,
   556 U.S. 418 (2009)................................................................................................4

*Perro v. U.S.*
   96 Fed. App'x. 49 (2d Cir. 2004)............................................................................5

*Sutherland v. Ernst & Young LLP*,
   856 F. Supp. 2d 638 (S.D.N.Y. 2012)...................................................................10

*Thapa v. Gonzales*,
   460 F.3d 323 (2d Cir. 2004)....................................................................................4

*U.S. v. Lee, Goddard & Duffy, LLP*,
   553 F. Supp. 2d 1164 (C.D. Cal. 2008) ................................................................10

*United States v. Gelb*,
   826 F.2d 1175 (2d Cir. 1987) ................................................................................................7

*Wainwright Securities Inc. v. Wall St. Transcript*,
   80 F.R.D. 103 (S.D.N.Y.1978) .............................................................................................5

**STATUTES**

Fed. R. Civ. P. 62(c) .......................................................................................................................4

FRAP 8(a)(2) ................................................................................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

Asia Optical Company, Inc. ("Asia Optical") respectfully submits this memorandum in support of its Motion To Stay Injunction Pending Appeal, Or In The Alternative, For Temporary Administrative Stay.

### INTRODUCTION

On July 30, 2015, this Court entered an anti-suit injunction permanently enjoining Asia Optical from pursuing its pending lawsuit in Chinese courts to recover a portion of the double royalties accepted by Kodak. This permanent injunction requires Asia Optical to dismiss with prejudice its entire suit in China in just a few days—by Thursday, August 6—or else to face being held in contempt and subjected to severe monetary penalties. Asia Optical appealed the permanent injunction to the Second Circuit Court of Appeals the very next day, on July 31, 2015, and now asks this Court to stay enforcement of the permanent injunction until the appeal is resolved.

As shown below, a stay pending resolution of the appeal will not prejudice or harm Kodak in any way, but the refusal to stay would cause irreparable harm to Asia Optical and effectively render its right to appeal meaningless. Absent a stay, Asia Optical will be forced to permanently and irrevocably abandon its lawsuit against Kodak in China. This means that even though there is at least a substantial possibility that Asia Optical may prevail on its appeal, Asia Optical's potential victory would be a hollow one—by the time the Court of Appeals rules on Asia Optical's appeal, the company would have already been compelled to abandon any legal right the Court of Appeals may determine Asia Optical has to pursue in the Chinese courts.

A stay pending appeal under these circumstances would prevent irreparable harm to Asia Optical, would not injure Kodak, and would cause no harm to any public interest. It is the only

1

way to prevent prejudice to either party and to ensure that Asia Optical's right to appeal is more than merely nominal in nature. For the reasons discussed below, the Court should grant this emergency motion and stay the permanent injunction pending Asia Optical's appeal.

## BACKGROUND

Since this Court is no doubt familiar with facts and proceedings in this case, Asia Optical presents only a brief recitation of the relevant background below.

### A. Fujifilm Represents to the Japanese Arbitration Panel that It Paid Kodak Royalties On the DSCs at Issue Under the 2013 Kodak/Fujifilm Agreement.

As the Court is aware, after the Court entered the 2012 Judgment in this case, Asia Optical brought a claim for indemnification against Fujifilm in Japan to recover the amount of the Judgment. (*See, e.g.,* Dkt. No. 136-1.) In its briefing to the arbitration panel, Fujifilm argued that it had no obligation to indemnify Asia Optical because, among other things, the patent license fees paid by Fujifilm to Kodak under the 2013 Kodak/Fujifilm Agreement covered the DSCs that Fujifilm purchased from Asia Optical. Based in part on this argument, the Japanese arbitration panel denied all claims brought by Asia Optical against Fujifilm on February 28, 2014, concluding that Fujifilm had already paid Kodak royalties on the DSCs made by Asia Optical for Fujifilm.

On May 30, 2014, Asia Optical appealed the ruling by the arbitral panel to the Tokyo District Court in Japan. This appeal was recently denied on March 11, 2015. Asia Optical has further appealed the arbitral panel's ruling to the Tokyo High Court on March 24, 2015. This second appeal remains pending.

2

### B. Asia Optical Brings the Chinese Lawsuit to Recover Royalty Payments Made to Kodak Because Fujifilm Allegedly Paid Those Royalties Already.

Following the ruling by the Japanese arbitral panel as of February 28, 2014, Asia Optical filed suit in China on July 28, 2014 against Kodak and named Fujifilm as a third party in order to recover the royalties paid by Asia Optical if Fujifilm also paid Kodak royalties, since Kodak is not entitled to collect royalties twice for the same cameras. (Dkt. No. 164-2 and 164-3 (Chinese Complaint).) Importantly, Asia Optical's claim for recovery in the Chinese complaint is based on the 2013 Kodak/Fujifilm Agreement and the fact that Kodak and Fujifilm "maliciously concealed [the agreement] and caused losses to [Asia Optical]." (Dkt. No. 164-3 (Chinese Complaint) at 12.) The Chinese complaint asserts that Fujifilm's alleged payment to Kodak under the 2013 Kodak/Fuji Agreement to cover the DSCs made by Asia Optical resulted in a double payment of royalties to Kodak, thereby violating the prohibition in Section 5.6 of the April 9, 2004 Patent License Agreement ("PLA") between Asia Optical and Kodak on collecting royalties from both Asia Optical and Fujifilm. (*Id.* at 12-13.)

### C. This Court Enters a Permanent Injunction Requiring Asia Optical to Dismiss the Chinese Lawsuit With Prejudice, and Asia Optical Appeals.

On March 24, 2015, Kodak brought a motion for Anti-Suit Injunction, seeking to bar Asia Optical from proceeding with its Chinese Lawsuit against Kodak. (Dkt. No. 162.) On July 23, 2015, this Court issued an order granting Kodak's motion. (Dkt. No. 179.) Following that order, on July 30, 2015, the Court entered a permanent injunction directing Asia Optical to do the following: dismiss with prejudice the Chinese Lawsuit within five business days; refrain from initiating further actions against Kodak anywhere in the world seeking to recover royalties paid pursuant to the Final Judgment; compensate Kodak for any costs or fees incurred in defending the Chinese Lawsuit after five business days following the Order; and file with this Court a certification of compliance. (Dkt. No. 183 (the "Permanent Injunction")).

Asia Optical promptly filed a Notice of Appeal of the Permanent Injunction on July 31, 2015. (Dkt. No. 184.) Unless a stay of proceedings pending resolution of the appeal is granted, Asia Optical will be required to comply with the Permanent Injunction by in just a few days, by Thursday, August 6, 2015. Accordingly, Asia Optical brings this emergency motion for stay of enforcement of the Permanent Injunction pending final disposition of its appeal.

## LEGAL STANDARD

A district court may grant a stay pending the appeal of an injunction pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. *Nken v. Holder*, 556 U.S. 418, 427 (2009). That rule grants the district court discretion to determine, based on the "circumstances of the particular case," whether to "suspend, modify, restore, or grant an injunction" while an appeal is pending on an order which "grants, dissolves, or denies an injunction." *Id.* at 433; Fed. R. Civ. P. 62(c).

In determining whether to grant a stay pending appeal, the court should consider the following four factors: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal, and (4) the public interests that may be affected. *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir.1993) (citations omitted).

Under the law in this Circuit, "more of [any] one factor excuses less of the others." *See id.*; *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007). If a party can demonstrate "some possibility of success" and also demonstrate that the "balance of hardships tips decidedly in his favor" then a stay is proper. *See Thapa v. Gonzales*, 460 F.3d

323, 334 (2d Cir. 2004) (granting stay of 60-day voluntary departure order by the Board of Immigration Appeals while consideration of voluntary departure order was pending).

## ARGUMENT

### THE COURT SHOULD STAY THE PERMANENT INJUNCTION BECAUSE THE FOUR APPLICABLE FACTORS ARE SATISFIED.

The Court should stay enforcement of the Permanent Injunction to allow Asia Optical the opportunity to meaningfully exercise its right to appeal that order, as complying with the Permanent Injunction will force Asia Optical to permanently surrender its Chinese Lawsuit claims, irrevocably negating the relief it now seeks on appeal. As shown below, all of the four factors to be considered when deciding whether to issue a stay are satisfied here.

**I.**   **Asia Optical Will Suffer Irreparable Injury Absent A Stay Because It Will Be Forced To Irreversibly Abandon All Of Its Claims Pending In A Foreign Court.**

The first factor, whether the movant will suffer irreparable harm absent a stay pending appeal, weighs heavily in favor of granting a stay. As discussed above, the Permanent Injunction requires Asia Optical to dismiss with prejudice its claims pending against Kodak in Chinese courts. Asia Optical has now appealed the Order to the Second Circuit. (Dkt. No. 184). However, if the Permanent Injunction is not stayed pending Asia Optical's appeal, the impact of the Court of Appeal's ruling will be effectively mooted, as any right Asia Optical may have to pursue its claims against Kodak in China will have already been forfeited by Asia Optical's compliance with the Permanent Injunction (compliance is due no later than August 6, 2015).

Dismissal with prejudice is considered a "harsh" measure. *See, e.g., Barclay v. Doe* (2d Cir. 2006) 207 Fed. App'x. 102, 104 ("dismissal with prejudice is a harsh remedy"); *Perro v. U.S.* (2d Cir. 2004) 96 Fed. App'x. 49, 50 (same). This is because dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. *Wainwright Securities Inc. v. Wall St.*

5

*Transcript*, 80 F.R.D. 103, 105 (S.D.N.Y.1978). Such a dismissal constitutes a final judgment with the preclusive effect of "res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986). As dismissal with prejudice is irreversible and would entirely deprive Asia Optical of any ability to bring its claims in China, the harm Asia Optical would suffer absent a stay is categorically irreparable.

Here, Asia Optical is faced with an impossible choice absent a stay of enforcement of the Permanent Injunction. If Asia Optical complies with the order—by August 6, as the Permanent Injunction requires—and then prevails on its appeal, Asia Optical's victory on appeal will be devoid of any practical value, as the claims it seeks to preserve will have already been dismissed with prejudice. If Asia Optical does not comply, it exposes itself to heavy sanctions for being in contempt of the Court's order.

Kodak may argue in opposition that Asia Optical had no right to file the Chinese Lawsuit to being with, and thus would lose nothing by being forced to dismiss it. But that argument impermissibly presupposes the outcome of Asia Optical's appeal—it is now for the Court of Appeals to decide whether Asia Optical's Chinese action is proper. Without a stay, though, a favorable decision by the Court of Appeal would be meaningless. Because of the drastic, immutable impact of a dismissal with prejudice, a stay pending the appeal is the only way to meaningfully preserve Asia Optical's right to appeal.

**II.     No Party Will Be Substantially Injured If A Stay Is Issued.**

Kodak will not be substantially injured if the Court issues a stay of the permanent injunction. The only possible source of such injury would be the expense associated with litigating the China lawsuit. But that litigation is currently on hold. (*See* Declaration of Jasper Jia ¶2.) Kodak has previously filed a motion challenging the China court's jurisdiction, which

motion has not yet been resolved and has resulted in the suspension of proceedings. (*Id.*) Accordingly, Kodak cannot show that it would be substantially injured by a stay; but even if it could, that would be far outweighed by the prejudice that Asia Optical would suffer by having to forever give up its rights in the Chinese litigation.

**III.    A Substantial Possibility Exists That Asia Optical Will Prevail On The Merits Of Its Appeal.**

As courts have recognized, a court will seldom issue an order or judgment "and then turn around and grant [a stay] pending appeal, finding, in part, that the party seeking [the stay] is likely to prevail on appeal, *i.e.* that it is likely that the court erred in [issuing the underlying order or judgment]." *Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cnty. of Chemung, New York*, 812 F. Supp. 2d 273, 275 (W.D.N.Y. 2011) (internal quotation and citation omitted). Because of this, "an appellant seeking a stay need not demonstrate that it will *probably* succeed on appeal; if that were the standard, few if any district courts would ever grant a stay." *Blossom S., LLC v. Sebelius*, No. 13-CV-6452L, 2014 WL 204201, at *3 (W.D.N.Y. Jan. 17, 2014). All that is required is a "substantial possibility" of prevailing on appeal. *Id.* (citing *United States v. Gelb*, 826 F.2d 1175, 1177 (2d Cir. 1987)).

Here, there is at least a "substantial possibility" that Asia Optical prevails on appeal. While this Court determined that Kodak was entitled to an anti-suit injunction, bases exist on which the Court of Appeals could conclude otherwise and find that Kodak failed to satisfy the two threshold criteria for such injunction—*i.e.,* (1) resolution of the case before the enjoining court must be dispositive of the enjoined action; and (2) the parties to both suits are the same. *See China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987).

<u>First</u>, the Court of Appeals could determine that the resolution of this case in New York is not "dispositive" of the Chinese action because Asia Optical's allegations in the latter action are based on an entirely different agreement—the 2013 Kodak/Fuji Agreement—than the April 9, 2004 PLA and Side Letter that were at issue before this Court.

Asia Optical's Chinese action is centered on the facts that (1) Fujifilm became a Kodak licensee <u>after the Court entered its 2012 Judgment,</u> and (2) according to Fujifilm, the 2013 Kodak/Fujifilm Agreement provided that Fujifilm had paid Kodak royalties on the same DSCs for which Asia Optical paid royalties in this case. The 2013 Kodak/Fujifilm Agreement, therefore, gave rise to Asia Optical's claim in the Chinese action of improper double royalty collection by Kodak. Since the 2013 Kodak/Fujifilm Agreement did not exist when the Court issued its March 2012 summary judgment decision, the Court of Appeals could conclude that this Court did not and could not have decided the issues raised in Asia Optical's Chinese complaint.

Thus, Asia Optical's Chinese complaint raises new issues based on new facts that were not before this Court. The Court of Appeals could find that Asia Optical's Chinese action does not collaterally attack the Judgment because it does not argue that this Court's reasoning was wrong or that the Judgment was improperly entered. Rather, Asia Optical argues in the Chinese action that events that occurred <u>after</u> entry of the 2012 Judgment warrant return of the money that Asia Optical paid Kodak. As such, the Court of Appeals could conclude that the Court's resolution of this case is not "dispositive" of the issues raised in the Chinese action, and that Kodak's anti-suit injunction motion should have been denied for failing to satisfy this *China Trade* factor alone.

8

<u>Second</u>, the Court of Appeals could determine that the parties in the actions are not the same or substantially similar, and accordingly that the second threshold *China Trade* factor is lacking.  Specifically, the Court of Appeals could find that the presence, involvement, and necessity of Fujifilm in the Chinese action, as compared to Fujifilm's absence from this federal litigation, required denial of the anti-suit motion.

As noted in Asia Optical's previous papers, Fujifilm's role in the parties' dispute is crucial.  At that heart of Asia Optical's Chinese complaint is the 2013 Kodak/Fuji Agreement and Fujifilm's involvement in causing Asia Optical to pay royalties to Kodak that Fujifilm allegedly also paid Kodak.  That complaint alleges that Kodak and Fujifilm "maliciously concealed [the agreement] and caused losses to [Asia Optical]."  (Dkt. No. 164-3 (Chinese Complaint) at 12.)  In this context, though Fujifilm is named as a third-party in the Chinese complaint, as a signatory to the 2013 Kodak/Fuji Agreement, its position is decidedly integral.  (Fujifilm may well have an even more prominent role in this dispute than recited in Asia Optical's Chinese complaint if it fraudulently represented to the Japanese arbitration panel that it already paid Kodak under the 2013 Kodak/Fujifilm Agreement, leading at least in part to the denial of Asia Optical's claims in the Japanese arbitration and the filing of Asia Optical's Chinese complaint.)

In this case, though, Fujifilm was absent and indisputably not a party—the Court granted Fujifilm's motion to dismiss for lack of personal jurisdiction on June 13, 2012.  (Dkt. No. 87.)

The parties in this case and the China action, therefore, are not the "same," nor are the parties even "sufficiently similar" given Fujifilm's prominence in the parties' three-way dispute.  Thus, there is a substantial possibility that the Court of Appeals concludes that the second threshold *China Trade* requirement is not met.

**IV.     No Public Interest Will Be Harmed By Staying The Injunction**

The fourth and final factor, impact on public interests, also weighs in favor of granting the stay Asia Optical seeks.  This is a dispute between private litigants, and no public interests would be impacted by staying the enforcement of the Permanent Injunction.  To the extent that any public interest is implicated at all, there is no harm that can reasonably result from staying enforcement long enough for Asia Optical to pursue its appeal.

It is only where the stay will directly impact an important public interest that this factor weighs against granting a stay.  For example, denial of a stay pending appeal is appropriate where the stay will interfere with a governmental investigation.  *See, e.g., In re Friedberg*, 1991 WL 259038, at *5 (S.D.N.Y. Nov. 25, 1991) (stay pending appeal would interfere with referral to DOJ for investigation of bankruptcy fraud); *U.S. v. Lee, Goddard & Duffy, LLP*, 553 F. Supp. 2d 1164, 1169 (C.D. Cal. 2008) (public's strong interest in having IRS promptly complete tax investigations undermined by stay).  Likewise, a stay pending appeal negatively impacts public interests where it would undermine judicial economy by forcing unnecessary proceedings or disrupting the court's ability to efficiently manage the case.  *See, e.g., Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012) ("First, considerations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary."); *In re Pacific Gas and Elec. Co.*, 2002 WL 32071634, at *4 (N.D. Cal., Nov. 14, 2002) (public interest disfavored stay pending appeal where stay would interfere with court's management of proceedings).

None of these interests are implicated here.  Indeed, to the extent that the public has an interest in seeing that a party's interests are not irreparably harmed by the judicial process, the public interest weighs in favor of granting a stay pending appeal.  A stay in this matter would otherwise be entirely neutral from the perspective of the public interest.

## CONCLUSION

For the foregoing reasons, all of the applicable factors weigh in favor of staying enforcement of the Court's Permanent Injunction pending resolution of Asia Optical's appeal to the Second Circuit. However, should the Court determine not to stay enforcement entirely, it should grant a temporary administrative stay of the Permanent Injunction pending resolution by the Court of Appeals of a stay motion to that court under FRAP 8(a)(2).

Dated:  August 4, 2015                                             Respectfully submitted,

                                                                                         By: /s/ Christopher Kao
                                                                                         Christopher Kao
                                                                                         PERKINS COIE LLP
                                                                                         3150 Porter Drive
                                                                                         Palo Alto, CA 94304-1212
                                                                                         Telephone: 650.838.4300