UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EASTMAN KODAK COMPANY,

    Plaintiff, Judgment-Creditor,

    v.

ASIA OPTICAL CO, INC.,

    Defendant, Judgment-Debtor.

Civil Action No. 11-cv-6036-DLC

**EASTMAN KODAK COMPANY'S OPPOSITION TO ASIA OPTICAL COMPANY, INC.'S EMERGENCY MOTION TO STAY PERMANENT INJUNCTION PENDING APPEAL, OR IN THE ALTERNATIVE, FOR TEMPORARY ADMINISTRATIVE STAY**

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Eastman Kodak Company*

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   BACKGROUND FACTS ................................................................................................2

    A.   The Underlying District Court Litigation ............................................................2
    B.   Kodak's Anti-Suit Injunction................................................................................2
    C.   AO's Motion for a Stay........................................................................................3

III.  ARGUMENT ...................................................................................................................3

    A.   AO Has Not Come Close to Establishing A Realistic Possibility Of Success On The
         Merits Of Its Appeal .............................................................................................4
    B.   AO Will Not Be Irreparably Injured Absent a Stay..............................................9
    C.   A Stay Would Substantially Injure Kodak.........................................................10
    D.   The Public Interest Counsels Against a Stay .....................................................12

IV.   CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25 (2015) ..................................................12

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 CIV. 1853 (PGG), 2010 WL 1050988..................................................................................................................................8

*Bailey Shipping Ltd. v. Am. Bureau of Shipping*, No. 12-civ-5959, 2013 WL 5312540 (S.D.N.Y. Sept. 23, 2013).............................................................................7, 9

*Canon Latin Am., Inc. v. Lantech (CR), S.A.*, No. 05-20297 CIV, 2007 WL 2320588 (S.D. Fla. Aug. 10, 2007)..............................................................................10

*Chevron Corp. v. Donziger*, 37 F. Supp. 3d 653, 657 (S.D.N.Y. 2014).........................................4

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 950 F. Supp. 48 (E.D.N.Y. 1996), *aff'd*, 126 F.3d 365 (2d Cir. 1997)...................................................................................................7

*Dandong v. Pinnacle Performance Ltd.*, No. 10-civ-8086, 2011 WL 6156743 (S.D.N.Y. Dec. 12, 2011) ..................................................................................................8

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002) ...................................13

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) *reconsideration denied*, No. 13 CIV. 2311 JSR, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014) ..............................................................................................................................13

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .....................................................................................3

*Ironshore Specialty Ins. Co. v. Eidos Partners, LLC*, No. 13-CV-8434 KBF, 2014 WL 3405029 (S.D.N.Y. July 7, 2014) ..............................................................................12

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan*, 500 F.3d 111 (2d Cir. 2007) .....................................................................................................................6, 8

*Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023 (N.D. Iowa 2004) ....................................5

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909 (D.C.Cir.1984)........................................................................................................13

*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994) ..............................................................................4

*Marshak v. Reed*, 199 F.R.D. 110 (E.D.N.Y. 2001) .....................................................................5

*Motorola Credit Corp. v. Uzan*, 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003)....................................8

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................................3, 4

*Omnioffices, Inc. v. Kaidanow,* 201 F. Supp. 2d 41 (D.D.C. 2002) ...............................11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004)...................................................................................9, 12

*Salix v. U.S. Forest Serv.*, 995 F. Supp. 2d 1148 (D. Mont. 2014).................................13

*Shays v. Fed. Election Comm'n,* 340 F. Supp. 2d 39 (D.D.C. 2004) ................................5

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,* 53 F. App'x 597 (2d Cir.
  2002) .......................................................................................................................12

*Silverstein v. Penguin Putnam, Inc.*, No. 01 CIV.309 JFK, 2003 WL 21361734
  (S.D.N.Y. June 12, 2003)..........................................................................................4

*T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13 CIV. 5356 HB, 2013
  WL 6409476 (S.D.N.Y. Dec. 9, 2013) .....................................................................9

### STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 60(b)(3)......................................................................................................8

Fed. R. Civ. P. 62(c) ........................................................................................................13

L.R. 31.2 ...........................................................................................................................11

### OTHER AUTHORITIES

11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2904
  (3d ed.) .....................................................................................................................3

Pursuant to the Court's August 5, 2015 Order (Dkt. 189) and Defendant's subsequent response declining the Court's proposed conditional stay of the July 30, 2015 permanent injunction (Dkt. 190), Plaintiff Eastman Kodak Company ("Kodak") respectfully submits this opposition to Defendant Asia Optical Co. Inc.'s ("Asia Optical" or "AO") motion to stay the July 30, 2015 permanent injunction pending appeal.

## I.     INTRODUCTION

AO's motion to stay should be denied because AO has failed to establish any of the factors necessary for a stay.  *First*, AO has not established a realistic possibility of success on the merits of the appeal; instead it simply rehashes the same arguments it made in its opposition to Kodak's motion for anti-suit injunction.  *Second*, AO cannot establish irreparable harm absent a stay because the purported harm is of its own making – specifically, it could have raised the issue of the Fuji agreement in the instant litigation but chose not to.  *Third*, Kodak would be substantially injured by a stay.  Because the Chinese action would likely be completed before any appeal (particularly in light of AO's apparent refusal to pursue an expedited appeal and withdraw the Chinese action without prejudice), a stay of the injunction pending the appeal would effectively render the injunction meaningless.  In the meantime, Kodak would be forced to continue to defend itself against AO's claims in the China action despite obtaining a permanent injunction against the advancement of that very lawsuit.  *Finally*, a stay is directly contrary to the public interest; court-ordered judgments—such as the Court's 2012 $33 million final judgment and its permanent injunction—should be protected and not undermined by foreign proceedings such as AO's Chinese action.

The final judgment in this case was entered over three years ago.  AO should not be permitted to use a stay to continue to seek to avoid the Final Judgment.

## II.   BACKGROUND FACTS

### A.   The Underlying District Court Litigation

More than three years ago, in 2012, the Court found that AO breached the parties' Patent License Agreement by failing to pay royalties to Kodak on its digital camera sales to Fujifilm Corporation ("Fuji").  Accordingly, on July 18, 2012, the Court entered Final Judgment in favor of Kodak in the amount of $33,726,531.  (*See* Dkt. 98 [Final Judgment].)  Since then, AO has repeatedly tried to delay, avoid, and ultimately undo the Court's final judgment.  AO refused to pay the judgment against it for ***fifteen months***.  AO began making payments only after the Court held that AO would be held in contempt if it failed to make payment on an agreed-upon installment schedule.  But even as it was making the installment payments necessary to satisfy the judgment, AO secretly filed a lawsuit against Kodak in China on July 28, 2014 seeking to recover $12,368,103 of the total amount paid Kodak in accordance with this Court's judgment.

### B.   Kodak's Anti-Suit Injunction

On March 24, 2015, Kodak filed a Motion for Anti-Suit Injunction seeking to enjoin Asia Optical from proceeding with the litigation filed against Kodak in China.  On July 23, 2015, this Court granted Kodak's motion, finding that AO's foreign lawsuit was a "vexatious" attempt to re-litigate the same contract issues for which "AO was given a full and fair opportunity to be heard" in this Court.  (Dkt. 179 [Opinion & Order] at 17.)  In accordance with that decision, on July 30, 2015, the Court entered a permanent injunction, enjoining AO from proceeding with its lawsuit in China.  (Dkt. 183 [Order for Permanent Injunction].)  Specifically, the Court ordered, among other things, that AO dismiss the lawsuit in China within five business days from the entry of the injunction (i.e. by August 6, 2015) and refrain from filing any similar lawsuit in another jurisdiction in the future.

### C. AO's Motion for a Stay

On August 4, 2015, Asia Optical filed an emergency motion to stay the injunction while the case is pending appeal. (Dkt. 185 [AO's Emergency Motion to Stay Permanent Injunction].) On August 5, 2015, following AO's emergency motion for a stay, this Court issued a directive that AO confirm by August 7 whether it would consent to the issuance of a stay of the injunction subject to the following conditions: "(i) that the defendant file by August 14, 2015, a motion for expedited review of its August 3 appeal before the Court of Appeals for the Second Circuit; and (ii) that the defendant withdraw by August 14, 2015, the Chinese complaint without prejudice pending a decision of the Court of Appeals for the Second Circuit on the defendant's August 3 appeal." (Dkt. 189.) While Kodak would have been amenable to the Court's proposal, AO responded by indicating that it would "not consent" to the Court's conditions. (Dkt. 190.) Notwithstanding this Court's orders, AO apparently intends to continue the Chinese litigation imposing additional burden and expense on Kodak.

### III. ARGUMENT

Stays are considered an "intrusion into the ordinary processes of administration and judicial review" and are granted or denied at the discretion of the Court. *Nken v. Holder*, 556 U.S. 418, 427, 433-34 (2009) (quotation marks and citation omitted). As a result, Asia Optical faces a "heavy burden" in demonstrating that a stay is warranted. *See, e.g.*, 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 2904 (3d ed.).

Asia Optical must establish each of the following four factors in order to be eligible for a stay pending appeal: (1) AO is likely to succeed on the merits of its appeal, (2) AO will be irreparably injured absent a stay, (3) a stay would not injure Kodak, and (4) the public interest favors a stay. *See Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776

3

(1987)); *Silverstein v. Penguin Putnam, Inc.*, No. 01 CIV.309 JFK, 2003 WL 21361734, at *1 (S.D.N.Y. June 12, 2003). With respect to the first factor, a movant cannot merely propose the "possibility" of success. *See Chevron Corp. v. Donziger*, 37 F. Supp. 3d 653, 657 (S.D.N.Y. 2014). Instead, the movant must establish "a substantial case for relief on the merits." *Nken*, 556 U.S. at 434-35; *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir. 1994) (stating that the movant must present a "substantial case on the merits when a serious legal question is involved"). In addition, the movant must show "that the balance of equities weighs heavily in favor of granting the stay." *Id.* AO has not met and cannot meet its heavy burden of showing that a stay is warranted.

### A. AO Has Not Come Close to Establishing A Realistic Possibility Of Success On The Merits Of Its Appeal

AO's cursory effort completely fails to establish a substantial possibility it will prevail on appeal.

***First***, AO argues that the Court of Appeals "*could*" conclude (1) the final judgment is supposedly not dispositive of the Chinese action, because the Chinese action is allegedly based on the 2013 Kodak/Fuji agreement; and (2) the parties in the two actions are allegedly not the same, since Fuji was named as a third-party in the Chinese action but was not involved in the instant litigation. (Dkt. 187 [Memorandum of Law in Support of Emergency Motion to Stay (hereinafter "Mot.")] at 7.) But AO's arguments are identical to the arguments it made in its opposition to Kodak's Motion for Anti-Suit Injunction which this Court properly rejected. (*See* Dkt. 172 at 5-9; Dkt. 183; Dkt. 179 at 11-16.) AO fails to offer any new evidence or authority to show a substantial possibility of appellate success on this issue. Where, as here, the movant does nothing more than regurgitate arguments that the district court has already rejected, a stay should be denied. *Silverstein*, 2003 WL 21361734, at *1 ("The application for a stay is not meant as a

tool to reargue the merits of the underlying case."); *see also Marshak v. Reed*, 199 F.R.D. 110, 111 (E.D.N.Y. 2001) (denying stay application); *Shays v. Fed. Election Comm'n,* 340 F. Supp. 2d 39, 46 (D.D.C. 2004) (finding that defendant has failed to establish the foundations of a likelihood of success on the merits upon appeal because it simply "regurgitat[es] rejected arguments"); *Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1036 (N.D. Iowa 2004) (finding defendant has not made the required "strong showing that [it] is likely to succeed on the merits" where its proffered reasons for success "are nothing more than a reiteration of the objections and arguments already considered by this court in [Defendant's] motion for summary judgment, during trial, and in resolve [Defendant's] post-trial motions for judgment as a matter of law and for a new trial").

***Second***, the court correctly determined that this case ***is*** dispositive of the Chinese action. AO argues that it is not dispositive because the Chinese action is allegedly based on an "entirely different agreement"—the 2013 Kodak/Fuji agreement. (*See* Mot. at 12.) But the Court correctly rejected that argument. Both this case and AO's Chinese case involve the same underlying dispute: the royalties that AO owed Kodak under the Kodak/Asia Optical Patent Licensing Agreement ("PLA"). AO cannot avoid that by now attempting to repackage its arguments in the context of the 2013 Kodak/Fuji Agreement.

AO argued to this Court that it should not have to pay royalties to Kodak under the PLA because Fuji was responsible for paying. Specifically, AO argued that:

- Fuji had promised AO that Fuji would pay royalties owed to Kodak for cameras AO sold to Fuji (*See* Dkt. No. 56 (AO's Opposition to Eastman Kodak's Mot. for S.J., Jan. 13, 2012) at 3);

- AO was exempt from paying royalties for cameras AO sold to Fuji under Section 5.6 of the PLA because Fuji was allegedly responsible for the royalties (*id.* at 8–10);

- Kodak and Fuji had entered into a prior license agreement that barred Kodak from "double recovering" royalties on AO's sales to Fuji (*id.*); and

- Under the Side Letter to the PLA, AO was exempt from paying royalties when it performed "contract assembly" for retailers like Fuji. (*Id*. at 11–13.)

AO now makes the same arguments with respect to Fuji in its Chinese complaint. AO again argues that it does not have to pay royalties to Kodak for cameras AO sold to Fuji because Fuji is allegedly responsible for those royalties. (*See* Dkt. No. 164-2-3, Chinese Complaint at 26–27.) In fact, **AO cites the same provision of the PLA that it cited in this Court**—Section 5.6—as the basis of its claim to recover the royalties it was ordered to pay under the Court's Final Judgment. (*Id*. ("This obviously violated Article 5.6 of the Patent License Agreement concluded between [AO] and [Kodak]"); *id.* at 26 (requesting that the Chinese court find that "the obligations of Asia Optical to Defendant under the PLA shall be released"). Even AO concedes that the Chinese action seeks partial *reimbursement* of the payments it made to Kodak in satisfaction of the final judgment entered in the instant litigation. That fact alone demonstrates the extent of the overlap in the two cases.

The only distinction is that AO now attempts to re-package the argument and make it in the context of the 2013 Kodak/Fuji Agreement—it asserts that Fuji compensated Kodak for the royalties in the 2013 Kodak/Fuji Agreement and therefore that a portion of what AO paid under the Final Judgment should be "return[ed]." (*Id.* at 27 ("[Kodak] shall *return* to [AO] the patent royalty . . . paid by [AO]") (emphasis added)). But it is well established that a party cannot avoid an anti-suit injunction by simply citing different facts to re-litigate the same underlying dispute. *See Karaha Bodas Co., LLC v. Perusahaan Pertambangan*, 500 F.3d 111, 123, fn. 15 (2d Cir. 2007) ("the claims raised in the Cayman Islands action . . . have actually been litigated in the Southern District of Texas and the Southern District of New York, ***even if Pertamina***

*seeks to offer new facts in the Cayman Islands action in support of its position*") (emphasis added)); *Bailey Shipping Ltd. v. Am. Bureau of Shipping*, No. 12-civ-5959, 2013 WL 5312540, at *10 (S.D.N.Y. Sept. 23, 2013) (the "*China Trade* 'dispositive' requirement" attaches to issues that were either raised or "'*could have been raised*,' in the domestic action") (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 950 F. Supp. 48, 54 (E.D.N.Y. 1996), *aff'd*, 126 F.3d 365 (2d Cir. 1997)); *see also id.* (*China Trade* factors require only that the two actions are "*based on the same underlying dispute*."). This is fatal to AO's argument.

AO could have but did not raise the 2013 Kodak/Fuji Agreement with this Court. (*See* Dkt. 172 [AO's Opposition to Kodak's Motion for Anti-Suit Injunction] at 6.) AO conceded in its Opposition that it knew about the 2013 Kodak/Fuji Agreement (and any alleged Fuji arguments regarding the agreement)[1] during the Japanese arbitration with Fuji that concluded in February 2014—*nearly a year before this case was closed*. (*Id.* at 2-3.) Moreover, Kodak specifically told AO's counsel in May 2014 that the 2013 Kodak/Fuji Agreement contained the provision at issue in which Fuji agreed that it was *not* paying Kodak for any royalties due from AO. (*See* Dkt. No. 154-2 (May 29, 2014 E-mail from AO Counsel to Kodak Counsel).) AO thus had ample opportunity to raise the agreement with this Court in a post-judgment filing. Having failed to do so, AO cannot now point to the existence of the Kodak/Fuji Agreement as a basis to defeat an anti-suit injunction.

The fact that AO continued to pay the judgment in this Court after indisputably becoming aware of the 2013 Kodak/Fuji agreement and after the completion of the Fuji arbitration confirms that AO could have raised the issue in this Court but chose instead to attempt to re-

---

[1] AO asserts that Fuji argued in the arbitration that Fuji already paid the royalties. (*See* Dkt. 172 at 2-3.) But it has never cited any evidence to support that assertion nor has it provided Kodak any such evidence to support that assertion.

7

litigate the issue in a different Court.  These are precisely the type of circumstances in which an anti-suit injunction is warranted.  *See Karaha Bodas,* 500 F.3d at 118 fn. 9 (affirming issuance of anti-suit injunction where the defendant "could have sought relief from the federal judgments confirming and enforcing the award in federal court through Fed. R. Civ. P. 60(b)(3)"); *Dandong v. Pinnacle Performance Ltd.*, No. 10-civ-8086, 2011 WL 6156743, at *5 (S.D.N.Y. Dec. 12, 2011) (granting anti-suit injunction where "rather than availing themselves of the remedies available here, Defendants are attempting, by filing suit in Singapore, to render this Courts' ruling nugatory").[2]

**Third,** the Court correctly determined that the relevant parties are the same in this case and AO's Chinese action.  AO cannot overcome this by pointing to Fuji as a third party in the Chinese action.  (*See* Dkt. 187 at 9.)  Under *China Trade*, all that is required for an anti-suit injunction is that the "real parties in interest" are the same.  *See Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (finding sufficient similarity between parties, even though not all parties to the two actions were identical, because "the real parties in interest are the same in both matters") (emphasis added).  That standard is easily met here.

The only parties to the PLA are Kodak and AO.  (*See* Dkt. No. 45-1 (PLA).)  These are the only parties that were necessary for this Court to resolve the issue of how much AO owes under the PLA.  These same parties are involved in AO's Chinese complaint.  (*See* Dkt. No. 164-2-3, Chinese Complaint at 13.)  No more is required to show that the real parties in interest are

---

[2]    AO asserts in one conclusory paragraph that its Chinese action allegedly presents "no risk of inconsistent judgment."  (*See* Dkt. 172 at 9.)  This is incorrect.  AO asserts in its Chinese complaint that Kodak has breached Section 5.6 of the PLA—just as it asserted in this case.  This presents a clear risk of inconsistent judgments.  If the Chinese court interprets Section 5.6 of the PLA or AO's royalty payment obligations, it may directly contradict the rulings issued by this Court.  *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 CIV. 1853 (PGG), 2010 WL 1050988, at *8 (S.D.N.Y. Mar. 23, 2010 (granting anti-suit injunction where "[t]he existence of the [foreign] actions also presents a risk of inconsistent judgments.").

8

the same for purposes of issuing an anti-suit injunction. *See SG Avipro Fin. Ltd.*, 2005 WL 1353955, at *2 (S.D.N.Y. June 8, 2005) ("Although the parties named in both actions are not identical, they are sufficiently similar to satisfy the first threshold requirement because the uncontroverted evidence of record demonstrates that the real parties in interest are the same in both actions."); *T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13 CIV. 5356 HB, 2013 WL 6409476, at *2 (S.D.N.Y. Dec. 9, 2013) ("complete identity between parties is not required"); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652-53 (2d Cir. 2004) (stating that the parties must merely be "sufficiently similar" to meet this requirement of the anti-suit injunction standard and that the issues must be based on the same underlying dispute); *Bailey Shipping Ltd. v. Am. Bureau of Shipping*, No. 12-civ-5959, 2013 WL 5312540, at *10 (S.D.N.Y. Sept. 23, 2013) (same).[3]

Accordingly, AO cannot show a substantial possibility that it will prevail on appeal.

### B.  AO Will Not Be Irreparably Injured Absent a Stay

AO also fails to establish the second prong of the analysis—that it will be irreparably injured absent a stay. AO argues that if it complies with this Court's injunction order and dismisses its claims against Kodak with prejudice in the Chinese action, AO's appeal of the Court's injunction ruling would effectively be mooted. (Mot. at 5-6.) AO, however, cannot resist the prompt imposition of the injunction by hiding behind an alleged harm of its own creation. Specifically, AO first learned of the 2013 Kodak-Fuji Agreement—the contract AO contends is at issue in the Chinese action—while this case was still pending and AO was making periodic payments toward this Court's 2012 final judgment. Nevertheless, AO remained silent

---

[3]  Whether Fuji owes indemnification to AO is a separate issue, under apparently a separate agreement between AO and Fuji (that has never been shared with Kodak). Indeed, the Court's injunction here would not bar AO from continuing any appropriate action against Fuji.

about the 2013 Kodak-Fuji Agreement, paid the final installments, and requested that the case be closed, while simultaneously and secretly initiating suit in China to recover those very same payments.  As the Court noted in its opinion, "[t]o the extent that AO believe[d] that Kodak's agreement with Fuji entitles it to vacate the judgment entered against it in this Court, it could have pursued that relief in this Court."  (Dkt. 179 at 15.)  It chose not.

Under such circumstances, courts have rejected defendant's pleas of irreparable harm. *See, e.g.*, *Canon Latin Am., Inc. v. Lantech (CR), S.A.*, No. 05-20297 CIV, 2007 WL 2320588, at *1 (S.D. Fla. Aug. 10, 2007) (denying the stay of an ant-suit injunction in part because "Defendant was not forced to file its action in Costa Rica—it unilaterally chose to, and in so doing deliberately and intentionally ignored the clear provisions of the contract it knowingly entered into.  Now claiming it may be irreparably harmed because it did not bring that claim in this case, Defendant, if correct, has created its own irreparable harm.").

Indeed, AO's claim that it will be prejudiced is belied by its refusal to accept the Court's conditional stay proposal outlined in the Court's August 5 Order.  (Dkt. 189.)  The Court gave AO the option of a stay conditioned on AO agreeing to pursue an expedited appeal and withdraw its Chinese complaint *without prejudice* so that it could re-file in the event that it prevails in its appeal.  The conditions would have entirely eliminated any purported prejudice to AO.  AO's refusal confirms that its true intent is to use any stay to delay the enforcement of the injunction while it continues to proceed with the Chinese litigation in an attempt to circumvent this Court's orders.

### C. A Stay Would Substantially Injure Kodak

AO fails to establish the third prong of the analysis—that Kodak would not suffer injury from the requested stay.

A stay of the injunction pending the appeal would effectively render the injunction meaningless. The Chinese action is not on hold as AO asserts. (*See* Mot. at 6.) Kodak filed a motion to dismiss the action for lack of jurisdiction. A ruling on Kodak's motion is expected shortly (indeed, the Chinese court recently informed Kodak's Chinese counsel that a decision is imminent). Declaration of Michael J. Summersgill in Support of Kodak's Opposition to AO's Emergency Motion to Stay Permanent Injunction ("Summersgill Decl."), at ¶ 4. If Kodak's motion is not granted, the Chinese action will proceed to a final hearing on the merits rapidly—potentially as early as December of this year. *Id.* Under the Second Circuit local rules, AO's appeal may not be fully briefed until March 2016 and then it would likely take several more months to have oral argument and receive a decision. (*See* 2d Cir. L.R. 31.2.) As a result, particularly in light of AO's refusal to pursue an expedited appeal and withdraw the Chinese action without prejudice, the Chinese action could be completed before AO's appeal is completed and the stay is lifted. The stay would have thus effectively mooted the injunction. *See Omnioffices, Inc. v. Kaidanow*, 201 F. Supp. 2d 41, 44 (D.D.C. 2002) (finding that a stay is inappropriate where "a bond cannot adequately protect the defendants' interests" in "non-monetary judgments").

In the meantime, once Kodak's jurisdictional objection is resolved, the Chinese action will proceed rapidly to a hearing on the merits and Kodak will be forced to incur substantial additional costs to defend itself. To date, Kodak has already been forced to incur over $500,000 in order to defend itself against AO's claims in the Chinese action including by:

- Retaining a Chinese law firm—King & Wood—to litigate the case;
- Litigating against AO in China for the last seven months;
- Reopening the instant litigation in New York Federal Court; and

11

- Pursuing an Anti-Suit Injunction against AO in instant litigation.

Summersgill Decl. at ¶ 6.

Kodak spent three years and significant resources to recover royalty payments AO owed Kodak under the parties' PLA.  AO's motion to stay this Court's injunction against the Chinese action undermines the $33 million judgment entered by this Court and the substantial effort and resources incurred by Kodak obtaining that judgment.  *See Ironshore Specialty Ins. Co. v. Eidos Partners, LLC*, No. 13-CV-8434 KBF, 2014 WL 3405029, at *2 (S.D.N.Y. July 7, 2014) ("[Plaintiff] should not have to bear the burden of further delay of the Court's order (which was first issued nearly seven months ago) . . .").  Thus, this factor weighs strongly against a stay.  *See Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 29 (2015) (denying injunction pending appeal in part because it would create significant harm to nonmovant who would incur "unwarranted costs").

### D. The Public Interest Counsels Against a Stay

AO argues that "no public interests would be impacted by staying the enforcement of the Permanent Injunction."  (Dkt. 185, at 10.)  AO is again wrong.

*First*, it is very much in the public interest that the integrity and finality of court-ordered judgments be preserved and not undermined by improper foreign proceedings.  This Court entered final judgment against AO over three years ago.  Since then, AO has repeatedly tried to avoid and undermine that judgment.  The case law is clear—such behavior is contrary to the public interest.  Indeed, the Second Circuit has held that the standard for granting an anti-suit injunction should be "more lenient" where the court has already issued a final judgment in order to preserve the integrity of that judgment.  *See Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,* 53 F. App'x 597, 598 (2d Cir. 2002); *Paramedics*, 369 F.3d at 654 ("'[T]here is less

12

justification for permitting a second action,' as here, 'after a prior court has reached a judgment on the same issues.' . . . An anti-suit injunction may be needed to protect the court's jurisdiction once a judgment has been rendered") (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 928 n.53 (D.C.Cir.1984)); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 420 (S.D.N.Y. 2002) (anti-suit injunctions "ordinarily arise post-judgment in cases where a party, by filing a separate action in another forum, seeks to relitigate matters already adjudicated"); *Salix v. U.S. Forest Serv.*, 995 F. Supp. 2d 1148, 1155 (D. Mont. 2014) ("The public's interest in the 'integrity' of judicial proceedings includes the public interest in the finality of judgments.").

***Second***, courts routinely find that a stay is against public interest where, as here, the moving party has little to no chance of success on the merits. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 572 (S.D.N.Y. 2014) *reconsideration denied*, No. 13 CIV. 2311 JSR, 2014 WL 1301857 (S.D.N.Y. Mar. 19, 2014) ("[C]ourts tend to find that a stay is against the public interest where the moving party has not shown a sufficient likelihood of success on the merits.") (internal citation omitted).

## IV. CONCLUSION

Because AO has failed to establish any of the four factors required for granting a stay pending appeal, AO's motion should be denied.[4]

---

[4] If a stay is granted, Kodak respectfully submits that, consistent with the Court's August 5, 2015 Order, it should be subject to a number of conditions. AO should be required to: (1) seek immediate dismissal of the Chinese action without prejudice; (2) seek expedited review of its August 3 appeal before the Court of Appeals for the Second Circuit; and (3) post a substantial supersedeas bond with the Court. *See* Fed. R. Civ. P. 62(c) ("[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights"). The amount of the supersedeas bond should be equivalent in scope to AO's financial obligations under the order for permanent injunction. Specifically, sections iv-

Dated: August 10, 2015

Respectfully submitted,

/s/ Michael J. Summersgill
Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Eastman Kodak Company*

---

v of the order require that (1) AO compensate Kodak for any legal fees and costs incurred by Kodak in the Chinese lawsuit after the deadline for AO to dismiss that suit and (2) that AO pay Kodak a hierarchy of payments (identified in the order) should AO fail to comply with the injunction. Kodak has already incurred over $500,000 to defend itself against the Chinese claims and expects to incur far more if the Chinese action proceeds to a hearing on the merits. Summersgill Decl. at ¶¶ 4–6. Only a bond covering the expected costs would protect Kodak against further unwarranted expense.

14