UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>       Judgment-Creditor,<br><br>    v.<br><br>ASIA OPTICAL COMPANY, INC.,<br><br>       Judgment-Debtor. | Case No. 11-CV-6036 (DLC) |

**DEFENDANT ASIA OPTICAL COMPANY, INC.'S REPLY IN SUPPORT OF <u>EMERGENCY</u> MOTION TO STAY PERMANENT INJUNCTION PENDING APPEAL, OR IN THE ALTERNATIVE, FOR TEMPORARY ADMINISTRATIVE STAY**

**INTRODUCTION**

In its opening brief, Asia Optical established that (1) it would be irreparably harmed if forced to abandon its Chinese lawsuit with prejudice; (2) there is a sufficient basis for the Court of Appeals to rule in its favor; (3) any harm to Kodak would be slight in comparison to the complete forfeiture Asia Optical would suffer in the absence of a stay and (4) a stay pending appeal in this case does not implicate the public interest.  Kodak's Opposition fails to counter any of these points, as discussed below.  Instead, it simply presumes the outcome of Asia Optical's appeal to the Second Circuit, which is improper.  Accordingly, a stay pending appeal is appropriate in this case.

Moreover, should the Court wish to resolve this motion by ordering a stay pursuant to the conditions proposed in its August 5 Order, both parties are now willing to accept those terms.

**ARGUMENT**

**I.     Asia Optical Consents To The Terms Of The Court's August 5 Order.**

On August 5, 2015, the Court entered an Order (Dkt. No. 189) directing Asia Optical to indicate whether it consented to the issuance of a stay subject to the following conditions set forth in the Order:

> (i) that the defendant file by August 14, 2015, a motion for expedited review of its August 3 appeal before the Court of Appeals for the Second Circuit; and
>
> (ii) that the defendant withdraw by August 14, 2015, the Chinese complaint without prejudice pending a decision of the Court of Appeals for the Second Circuit on the defendant's August 3 appeal.

Given the short time period it had to consider these conditions (particularly in light of the large time difference between New York and Taiwan), Asia Optical initially responded on August 7, 2015, that it would not consent to the conditions.  (Dkt. No. 190).  However, upon further consideration, and after additional time and opportunity for Asia Optical's senior

executives and board of directors to actually confer on the matter in greater detail, Asia Optical filed an amended response on August 10, 2015 stating that it would consent to the terms of the Court's August 5 Order. (Dkt. No. 193.) Asia Optical intended to file this amended response prior to the filing of Kodak's Opposition, but was regrettably unable to do so because of technical difficulties.

Kodak indicated in its Opposition and in a subsequent filing on August 11 that it is amenable to a stay pursuant to the conditions of the Court's August 5 Order (Dkt. No. 191 at 3; Dkt. No. 194) Asia Optical is willing to abide by the conditions of the August 5 Order as well. Asia Optical objects, however, to Kodak's added condition that Asia Optical post a $1 million supersedeas bond in order to secure the stay. Asia Optical has already paid more than $33 million to Kodak—the full amount of the judgment—accordingly there is no justification for a bond pending the appeal. Accordingly, Asia Optical submits that the Court should enter a stay pursuant to its original conditions. If the Court does so, Asia Optical will file a motion for expedited review and withdraw its action in China without prejudice to refiling by August 14, 2015.

## II. THE COURT SHOULD STAY ITS ORDER, EVEN IN THE ABSENCE OF ASIA OPTICAL AGREEING TO THE COURT'S AUGUST 5 CONDITIONS.

Even if the Court is no longer inclined to enter a stay on the now consented-to conditions of the August 5 Order, Asia Optical nevertheless remains entitled to a stay pending appeal for the reasons set forth below.

### A. Asia Optical Will Be Irreparably Harmed If Forced To Dismiss Its Chinese Lawsuit With Prejudice.

As set forth in Asia Optical's opening brief, a permanent injunction requiring Asia Optical to dismiss with prejudice its pending lawsuit in China would cause an irreversible injury to Asia Optical. (Dkt. No. 187 at 5-6.) Dismissal with prejudice is an extreme measure with

broad, sweeping consequences—and by its very nature, it cannot be undone. *See, e.g., Barclay v. Doe* (2d Cir. 2006) 207 Fed. App'x. 102, 104; *Perro v. U.S.* (2d Cir. 2004) 96 Fed. App'x. 49, 50; *Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986); *Wainwright Sec. Inc. v. Wall St. Transcript*, 80 F.R.D. 103, 105 (S.D.N.Y. 1978). Dismissing its Chinese action with prejudice would moot Asia Optical's appeal to the Second Circuit, and as such, Asia Optical's right to appeal would be effectively obviated if the injunction is not stayed while the appeal is pending.

In its Opposition, Kodak argues that any irreparable harm Asia Optical suffers is of its own making, as though that were dispositive of the matter. (Dkt. No. 191 at 9-10.) But this is beside the point, because -- as with most of Kodak's arguments in its Opposition -- it improperly presumes the outcome of Asia Optical's appeal. Whether or not Asia Optical was both obligated and able to pursue in this Court any claims related to the 2013 Kodak-Fuji Agreement, and Fuji's contradictory statements in the arbitration between Fuji and Asia Optical in Japan, is squarely among the issues to be resolved by the Second Circuit. Kodak cannot assume the outcome of the appeal and argue that as a basis for denial of Asia Optical's motion to stay.

**B.     Kodak Will Not Be Substantially Injured By A Stay.**

Asia Optical demonstrated in its opening papers that Kodak would not be harmed by a stay during the pendency of the appeal, and that in any event any hypothetical harm endured by Kodak would be slight in comparison to the irreversible forfeiture Asia Optical would suffer without a stay. (Dkt. No. 187 at 6-7.) Indeed, the Chinese action filed by Asia Optical is currently suspended and there is no way of anticipating when it will proceed. (*See* Dkt. No. 186, Declaration of Jasper Jia ¶2.)

Kodak responds in its Opposition with mere speculation about how the Chinese action might proceed, and the extent of its presumed injury if the case were to proceed. (Dkt. No. 191 at 10-12.) But again, Kodak's arguments are based entirely on the presumption that its position

before this Court and in the Chinese action is correct.  Kodak fails to consider that it might be wrong (which it is), in which case any injury was suffered <u>by Asia Optical</u>, and not Kodak.  A temporary stay to allow the Second Circuit to address Asia Optical's appeal is warranted under the circumstances, given that compliance with the Court's Order would result in Asia Optical being foreclosed from pursuing its appeal at all, and from resuming its action in China later on.

Kodak is correct in noting that initially Asia Optical did not consent to the terms of the Courts' August 5, 2015 Order.  (Dkt. No. 190.)  However, as noted above, upon further consideration, Asia Optical determined that it would consent to the conditions of the Court's August 5 Order.  (Dkt. No. 193.)  Therefore, to the extent that Kodak's claim of injury is based on Asia Optical's refusal to withdraw the Chinese action without prejudice and to seek expedited review by the Second Circuit, Kodak's Opposition also fails to show any actual injury to Kodak caused by a stay.

### C.  A Substantial Possibility Exists That Asia Optical Will Prevail On The Merits Of Its Appeal.

The law is clear that Asia Optical is not obligated to establish that it *will* succeed on appeal—only that there is a substantial probability of success.  *See, e.g., Blossom S., LLC v. Sebelius*, No. 13-CV-6452L, 2014 WL 204201, at *3 (W.D.N.Y. Jan. 17, 2014) (citing *United States v. Gelb*, 826 F.2d 1175, 1177 (2d Cir. 1987)).  As set forth in Asia Optical's moving papers, the Court of Appeals can -- and should -- determine that the resolution of this case in New York is not "dispositive" of the Chinese action in the least, because Asia Optical's allegations in China are based on entirely different circumstances—the 2013 Kodak/Fuji Agreement, and Fuji's contradictory representations to an arbitral panel in Japan—than the April 9, 2004 PLA and Side Letter that were at issue before this Court.  (Dkt. No. 187 at 7-8.)  Additionally, the Court of Appeals can -- and should -- determine that the parties in the actions

are not the same or substantially similar, and that the presence, involvement, and necessity of Fuji (which was absent before this Court) required denial of the anti-suit motion.  (Dkt. No. 187 at 9.)

In its Opposition, Kodak simply accuses Asia Optical of rehashing old arguments.  Yet Kodak does precisely that, inviting this Court to improperly presume the outcome of the pending appeal because Kodak prevailed on the underlying anti-suit motion.  The cases cited by Kodak in its Opposition do not alter the applicable standard, and Kodak's attempt to cast Asia Optical's arguments as "regurgitated" reflects a mischaracterization (or at least a misunderstanding) of Asia Optical's position.  As discussed in Asia Optical's opposition to the anti-suit injunction motion, final judgment was entered in this matter on July 18, 2012 (Dkt. No. 98) before Asia Optical had any knowledge of the 2013 Kodak-Fuji Agreement, or of Fuji's contradictory representations to an arbitral panel in Japan, which contended that Kodak had obtained a recovery of the royalty from Fuji for the products manufactured by Asia Optical and that Asia Optical and was therefore free from its obligation in Section 5.6 of the PLA.  Asia Optical's claims in the Chinese action are new.  Asia Optical could not have raised any of these issues before this Court because they arose <u>after</u> the Court had already entered its final judgment in this case.  In particular, this Court never reached—and could not have reached—the issue of whether Kodak in fact collected double royalties arising out of the same conduct, which would obviously be improper.

### D. Kodak Cannot Point To Any Public Interest Undermined By A Stay.

In opposing Asia Optical's motion, Kodak argues generally that a stay will harm the public because (1) the public has an interest in the finality of judgments, which would be undermined by "improper" foreign proceedings and (2) that Asia Optical has "little to no chance" of success on appeal. (Dkt. No. 191 at 12-13.)

Both arguments rest on an assumption Kodak has no right or basis to make in opposing this motion—that the outcome of Asia Optical's appeal is a foregone conclusion. First, to the extent that the public has an interest in finality of judgment, that interest is not undermined by a stay pending appeal—the money ordered to be paid by the judgment has already been paid and remains in Kodak's possession. Second, even to the extent that the public has an interest in a having the judgments of U.S. courts preserved against foreign litigation, the logical conclusion of Kodak's argument is an untenable one, unsupported by any authority. In the event of a motion for anti-suit injunction, it will almost always be the case that purportedly "improper" foreign litigation is at issue. As Kodak would have it, the public interest would effectively preclude any review of an order granting an anti-suit injunction, because staying the injunction while an appeal is pending constitutes an affront to the finality of judgments. That is not the law. Asia Optical has a right to an appeal, and that right is meaningless unless it is excused from complying with the permanent injunction until its appeal can be heard.

The public interest is not offended by the taking of an appeal and by protecting an appealing party from suffering irreparable harm during the pendency of the appeal. Moreover, if the Court's final judgment was ultimately in error because of facts that could not be presented to the Court because they had not occurred yet (specifically, that Kodak was attempting to recover the same royalties twice), it is most certainly in the public's interest to have justice prevail, and for Kodak to be prevented from being unjustly enriched by an unwarranted double recovery.

## CONCLUSION

For the foregoing reasons, the Court should enter an order staying enforcement of the Court's Permanent Injunction pending resolution of Asia Optical's appeal to the Second Circuit.

Dated: August 11, 2015	Respectfully submitted,

By: /s/ Christopher Kao
Christopher Kao
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300

-8-